## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMIE BELOTTI and | : | |
| BECKY BELOTTI | : | CIVIL ACTION NO. 3:22-cv- |
| | : | 01284-MEM |
| Plaintiffs, | : | |
| | : | (Hon. Judge Malachy E. Mannion) |
| vs. | : | |
| | : | |
| STATE FARM FIRE AND | : | |
| CASUALTY COMPANY, | : | |
| | : | |
| Defendant. | : | |


## STATE FARM'S BRIEF IN SUPPORT OF
## MOTION TO DISMISS SECOND AMENDED COMPLAINT

# TABLE OF CONTENTS

INTRODUCTION ................................................................................1

PLAINTIFFS' ALLEGATIONS ........................................................3

STATEMENT OF QUESTIONS INVOLVED.....................................4

ARGUMENT .....................................................................................4

I.  PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF
    CONTRACT (COUNT III) .............................................................4

    A.  The Policy Does Not Require Using a Particular Estimating
        Software Setting. ...................................................................5

    B.  Plaintiffs Do Not Allege a Plausible Breach of State Farm's
        Indemnity Obligation. ...........................................................6

        1.  Plaintiffs Cannot Challenge the Sufficiency of State Farm's
            ACV Payments...............................................................7

        2.  Plaintiffs Do Not State a Claim for Entitlement to
            Replacement Cost Benefits. ...........................................8

II.  PLAINTIFFS FAIL TO STATE A CLAIM OF BAD FAITH (COUNT I). 10

III. PLAINTIFFS FAIL TO STATE A CLAIM FOR VIOLATION OF THE
     ILLINOIS CONSUMER FRAUD ACT (COUNT II). ...................12

     A.  The ICFA Does Not Apply to Plaintiffs. ............................12

     B.  The ICFA Claim is Preempted by Insurance Code Section 155.........14

     C.  Plaintiffs Fail to Adequately Allege an ICFA Claim. .........14

IV.  PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF THE
     IMPLIED COVENANT OF GOOD FAITH (COUNT IV)...........16

V.   PLAINTIFFS FAIL TO STATE A CLAIM FOR DECLARATORY
     RELIEF (COUNT V). ................................................................17

VI.  PLAINTIFFS FAIL TO STATE A CLAIM FOR VIOLATION OF THE
     UPTCPL (COUNT VI)..............................................................17

A.  Plaintiffs' Claims Are Outside the UTPCPL. ......................................17

B.  Plaintiffs Do Not Plead the Elements of a UTPCPL Claim................18

VII.  PLAINTIFFS' CLAIMS FOR DECLARATORY AND INJUNCTIVE RELIEF SHOULD ADDITIONALLY BE DISMISSED UNDER RULE 12(b)(1). ......................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Angino v. Wells Fargo Bank, N.A.*,
   No. 1:15-CV-418, 2016 WL 787652 (M.D. Pa. Feb. 19, 2016).........................18

*Ash v Cont'l Ins. Co.*,
   932 A.2d 877 (Pa. 2007) ...................................................................................10

*Avery v. State Farm Mut. Auto. Ins. Co.*,
   835 N.E.2d 801 (Ill. 2005) ...........................................................................12, 13

*Bolus v. Nationwide Prop. & Cas. Co.*,
   No. 3:16-CV-00753, 2018 WL 1474669 (M.D. Pa. Mar. 26, 2018).................19

*In re Burlington Coat Factory Sec. Litig.*,
   114 F.3d 1410 (3d Cir. 1997) ..............................................................................6

*Butta v. GEICO Cas. Co.*,
   400 F. Supp. 3d 225 (E.D. Pa. 2019)..................................................................17

*Camp v. New Jersey Mfrs. Ins. Co.*,
   No. CV 16-1087, 2016 WL 3181743 (E.D. Pa. June 8, 2016)...........................11

*Cheatle v. Katz*,
   No. Civ. A. 02–4405, 2003 WL 21250583 (E.D. Pa. Apr. 1, 2003) .................19

*Christopher v. First Mut. Corp.*,
   No. Civ.A. 05–01149, 2006 WL 166566 (E.D. Pa. Jan. 20, 2006)....................19

*Cicon v. State Farm Mut. Auto. Ins. Co.*,
   No. 3:14-CV-2187, 2015 WL 926148 (M.D. Pa. Mar. 4, 2015)........................16

*Clark v. Prudential Ins. Co. of Am.*,
   736 F. Supp. 2d 902 (D.N.J. 2010).....................................................................21

*Cook ex rel. Cook v. AAA Life Ins. Co.*,
   13 N.E.3d 20 (Ill. App. Ct. 2014) ......................................................................14

*Cramer v. Ins. Exch. Agency*,
   675 N.E.2d 897 (Ill. 1996)..................................................................................14

*Crichton v. Golden Rule Ins. Co.*,
    576 F.3d 392 (7th Cir. 2009) ....................................................................12, 13

*D'Ambrosio v. Pa. Nat'l Mut. Ins. Co.*,
    431 A.2d 966 (Pa. 1981) ..................................................................................16

*Dagit v. Allstate Prop. & Cas. Co.*,
    No. 16-3843, 2017 WL 395489 (E.D. Pa. Jan. 30, 2017) ...................................7

*Dayton v. Auto. Ins. Co. of Hartford, Conn.*,
    No. CV 3:20-1833, 2021 WL 5163221 (M.D. Pa. Nov. 5, 2021) ......................11

*Gardner v. State Farm Fire & Cas. Co.*,
    544 F.3d 553 (3d Cir. 2008) .............................................................................18

*Greenberger v. GEICO Gen. Ins. Co.*,
    631 F.3d 392 (7th Cir. 2011) ...........................................................................15

*Gridley v. State Farm Mut. Auto. Ins.*,
    840 N.E.2d 269 (Ill. 2005)...............................................................................13

*Hometown Cmty. Ass'n, Inc. v. Phila. Indem. Ins. Co.*,
    No. 17-CV-00777-RBJ, 2017 WL 6335656 (D. Colo. Dec. 12,
    2017) ...............................................................................................................8

*Houston v. GEICO Advantage Ins. Co.*,
    No. CV 22-35, 2022 WL 2834342 (W.D. Pa. July 20, 2022) ...........................11

*Hunt v. U.S. Tobacco Co.*,
    538 F.3d 217 (3d Cir. 2008), *as amended* (Nov. 6, 2008)................................19

*Ice City, Inc. v. Ins. Co. of N. Am.*,
    314 A.2d 236 (Pa. 1974)............................................................................7, 12

*Jonathan Z. v. Oxford Health Plans*,
    No. 2:18-cv-00383-JNP-JCB, 2022 WL 3227909 (D. Utah Aug. 9,
    2022) .............................................................................................................20

*Ke v. Liberty Mut. Ins. Co.*,
    No. CV 20-1591, 2020 WL 7353892 (E.D. Pa. Dec. 14, 2020)........................18

*Kerr v. State Farm Mut. Auto. Ins. Co.*,
    No. CV 18-309, 2018 WL 5809989 (W.D. Pa. Nov. 6, 2018)...........................17

*Leona's Pizzeria, Inc. v. Nw. Nat. Cas. Co.*,
   203 F. Supp. 2d 930 (N.D. Ill. 2002) .................................................................. 14

*Mirarchi v. Seneca Specialty Ins. Co.*,
   564 F. App'x 652 (3d Cir. 2014) .................................................................. 8, 12

*Monck v. Progressive Corp.*,
   No. 3:15-CV-250, 2015 WL 1638574 (M.D. Pa. Apr. 13, 2015) ............... 16, 20

*Mondron v. State Farm Mut. Auto. Ins. Co.*,
   No. CV 16-412, 2016 WL 7384183 (W.D. Pa. Dec. 21, 2016) ........................ 18

*NBL Flooring, Inc. v. Trumbull Ins. Co.*,
   No. 10-4398, 2014 WL 615967 (E.D. Pa. Feb. 12, 2014) .................................. 21

*New Park Manor, Inc. v. N. Pointe Ins. Co.*,
   No. 13 C 4537, 2013 WL 5408856 (N.D. Ill. Sept. 26, 2013) .......................... 15

*In re: Niaspan Antitrust Litig.*,
   No. 13-MD-2460, 2015 WL 8150588 (E.D. Pa. Dec. 8, 2015) ......................... 13

*Nye v. State Farm Mut. Auto. Ins. Co.*,
   No. 3:21-CV-01029, 2022 WL 969620 (M.D. Pa. Mar. 30, 2022) ................... 10

*Papurello v. State Farm Fire & Cas. Co.*,
   144 F. Supp. 3d 746 (W.D. Pa. 2015) .............................................................. 6

*Philidor Rx Svcs. LLC v. Polsinelli P.C.*,
   552 F. Supp. 3d 506 (E.D. Pa. 2021) .............................................................. 4

*Rancosky v. Washington Nat'l Ins. Co.*,
   170 A.3d 364 (Pa. 2017) ................................................................................. 10

*Reid v. BCBSM, Inc.*,
   984 F. Supp. 2d 949 (D. Minn. 2013) .............................................................. 21

*Ridolfi v. State Farm Mut. Auto. Ins. Co.*,
   No. 1:15-CV-859, 2017 WL 4418423 (M.D. Pa. Oct. 5, 2017) ....................... 16

*Riley v. Farmers Fire Ins. Co.*,
   735 A.2d 124 (Pa. Super. Ct. 1999) .............................................................. 11

*Seldon v. Home Loan Svcs., Inc.*,
  647 F. Supp. 2d 451 (E.D. Pa. 2009) ..................................................................19

*Seto v. State Farm Ins. Co.*,
  No. 2:10-CV-00505, 2012 WL 1836086 (W.D. Pa. May 21, 2012) ...................9

*Shaw v. USAA Cas. Ins.*,
  No. CV 3:17-947, 2018 WL 2183272 (M.D. Pa. May 11, 2018).......................11

*Sherwin-Williams Co. v. Cty. of Delaware, Pa.*,
  968 F.3d 264 (3d Cir. 2020) .............................................................................20

*Sieving v. Cont'l Cas. Co.*,
  535 F. Supp. 3d 762 (N.D. Ill. 2021) .................................................................12

*Simmons v. Nationwide Mut. Fire Ins. Co.*,
  788 F. Supp. 2d 404 (W.D. Pa. 2011)................................................................16

*Smith v. State Farm Mut. Auto. Ins. Co.*,
  506 F. App'x 133 (3d Cir. 2012) ..................................................................10, 11

*Smith v. State Farm Mut. Auto. Ins. Co.*,
  No. 11-7589, 2012 WL 508445 (E.D. Pa. Feb. 16, 2012), *aff'd,* 506
  F. App'x 133 (3d Cir. 2012) ..............................................................................19

*Stiers v. State Farm Ins.*,
  No. 3:11-CV-437, 2012 WL 2405982 (E.D. Tenn. June 25, 2012) ....................9

*Sullivan v. Liberty Mut. Ins. Co.*,
  No. 21 C 6084, 2022 WL 2105904 (N.D. Ill. June 10, 2022) ...........................20

*Toner v. GEICO Ins. Co.*,
  262 F. Supp. 3d 200 (E.D. Pa. 2017).................................................................10

*U.S. v. Vantage Tr. Fed. Credit Union*,
  No. 3:17-CV-0348, 2018 WL 306920 (M.D. Pa. Jan. 5, 2018) ........................17

*Vista Pointe Townhome Assoc. Inc. v. Auto-Owners Ins. Co.*,
  No. 16-CV-0973-MSK-NYW, 2017 WL 4772859 (D. Colo. Oct.
  23, 2017) ..............................................................................................................7

*Ware v. Rodale Press, Inc.*,
  322 F.3d 218 (3d Cir. 2003) ................................................................................4

*Warnstorff v. State Farm Auto. Ins. Co.*,
    No. 3:14-0077, 2014 WL 2808604 (M.D. Pa. June 19, 2014) ...........................11

*In re Wellbutrin XL Antitrust Litig.*,
    260 F.R.D. 143 (E.D. Pa. 2009)...........................................................................13

*Xi Chen Lauren v. PNC Bank, N.A.*,
    296 F.R.D. 389 (W.D. Pa. 2014) ........................................................................13

**Rules and Statutes**

215 ILCS 5/155 ..........................................................................................................14

42 Pa. C.S.A. § 8371 ..............................................................................................4, 10

73 Pa. C.S. § 201-2(4)(xxi) .......................................................................................18

Fed. R. Civ. P. 8 ........................................................................................................15

Fed. R. Civ. P. 9(b) ..............................................................................................15, 19

Fed. R. Civ. P. 12(b)(1)........................................................................................4, 20

Fed. R. Civ. P. 12(b)(6).............................................................................................4

## INTRODUCTION

Although Plaintiffs amended their pleading in the face of State Farm's Motion to Dismiss (Dkt. 9), their legal theories remain fatally deficient. Plaintiffs' Second Amended Complaint ("SAC") (Dkt. 25) continues to claim State Farm breached their Homeowners Policy (the "Policy") by using Xactimate software's "new construction" labor efficiency setting to estimate their loss, while admitting the Policy "does not prescribe a specific method of computation nor require a specific method of estimation" (SAC ¶ 25), and conceding that the "new construction" setting is commonly used in "large partial losses" (*id.* ¶ 42), like their "catastrophic" fire loss. (*Id.* ¶ 61.) Plaintiffs cannot claim State Farm breached a contractual obligation that does not exist, by using a software setting that was appropriate for their type of loss.

Plaintiffs' Policy (Ex. 1) contains a two-step loss settlement process, pursuant to which State Farm makes a payment for "the actual cash value" of the damaged property, and then pays the insured for any "additional amount" they "actually and necessarily" spent on repairs of the damaged property, provided that such repairs are completed within two years of the loss and State Farm is notified within thirty days of the repairs' completion. (Policy P029-30.) If there is a dispute over the amount of the loss, either side may request appraisal (*id.* P032), which Plaintiffs acknowledge occurred here. (SAC ¶ 67.) Plaintiffs do not, and *cannot*, allege they

received less than the actual cash value of the damaged portion of their property, which was set by contract and by the appraisal award received. Nor do Plaintiffs allege State Farm failed to reimburse them for amounts they actually spent on repairs, or that they received less than the cost to repair the damaged property, which is a cap on the amount payable under the Policy for covered damage, or that they complied with the timing requirements for such reimbursement. Because Plaintiffs cannot identify *any* policy provision that was breached by State Farm, they fail to state a claim for breach of contract.

Plaintiffs' extra-contractual claims are predicated on a breach of the Policy, and thus necessarily fail as well. These superfluous add-on claims are additionally subject to dismissal for myriad independent reasons, including that: Plaintiffs' bad faith claim provides only a conclusory laundry-list of alleged violations without supporting facts; the Illinois Consumer Fraud Act ("ICFA") has no extraterritorial application and is substantively deficient in any event; the claims for breach of the implied covenant of good faith and fair dealing and declaratory judgment are precluded as duplicative; and the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") does not apply to alleged wrongdoing in the adjustment of insurance claims. Moreover, Plaintiffs cannot seek to represent non-Pennsylvania insureds even if they had stated a viable claim against State Farm, which they do not. Finally, Plaintiffs also lack standing to seek declaratory and

injunctive relief, since they are no longer insured by State Farm. All of Plaintiffs' claims should be dismissed with prejudice.

## PLAINTIFFS' ALLEGATIONS

Plaintiffs previously owned a house in Duryea, Pennsylvania insured by State Farm that was damaged by a "catastrophic" fire on September 24, 2019. (SAC ¶¶ 2, 57, 61.) State Farm prepared a damage estimate using Xactimate software, which Plaintiffs allege offers a choice of estimating repair costs based on a "new construction environment" or "restoration, service, or remodeling environments." (*Id.* ¶ 34.) Plaintiffs claim their loss should have been estimated using the "repair/ restoration" setting, but State Farm used the "new construction" setting instead. (*Id.* ¶¶ 65, 115.)

Plaintiffs' own estimate of the cost of the repairs was roughly $200,000 higher than State Farm's estimate. (*Id.* ¶¶ 65, 66.) To resolve the parties' disagreement over the amount of loss, they agreed to appraise it under the Policy's appraisal provision. (*Id.* ¶ 67.) The appraisal award was closer to State Farm's estimate and over $105,000 less than Plaintiffs' estimate. (*Id.* ¶ 70.) Plaintiffs do not allege that State Farm failed to pay the ACV amount in the appraisal award. They do now allege, however, that State Farm failed to pay them the depreciation "holdback" in the award. (*Id.* ¶¶ 71, 109.)

In addition to claiming breach of contract (Count III), Plaintiffs assert claims for bad faith under 42 Pa. C.S.A. § 8371 (Count I), violation of ICFA (Count II), breach of implied covenant of good faith and fair dealing (Count IV), declaratory judgment (Count V), and violation of Pennsylvania's UTPCPL (Count VI). Plaintiffs further purport to assert a nationwide class claim under Count II (ICFA), and Pennsylvania class claims under Counts III, IV, V and VI. Plaintiffs seek declaratory relief under Count V and injunctive relief under Counts II (ICFA) and VI (UTPCPL).

## STATEMENT OF QUESTIONS INVOLVED

Whether: (1) Plaintiffs' claims should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim; and (2) Plaintiffs' claims for equitable relief and declaratory judgment should be dismissed pursuant to Rule 12(b)(1) for lack of standing.

## ARGUMENT

## I. PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF CONTRACT (COUNT III)

To properly allege a breach of contract, Plaintiffs must identify "a specific provision" of the contract that was plausibly breached. *Philidor Rx Svcs. LLC v. Polsinelli P.C.*, 552 F. Supp. 3d 506, 513-14 (E.D. Pa. 2021); *Ware v. Rodale Press, Inc.,* 322 F.3d 218, 225 (3d Cir. 2003) (plaintiff must show "a breach of a duty imposed by the contract"). They cannot do so.

## A. The Policy Does Not Require Using a Particular Estimating Software Setting.

Plaintiffs contend State Farm "breached the contract" by using Xactimate's "new construction" setting to estimate the value of their loss, rather than the software's "repair/reconstruction" setting. (SAC ¶ 115.) But Plaintiffs cannot identify any provision in the Policy that requires State Farm even to use specific repair estimating software, much less one particular setting in that software over another.

Plaintiffs admit: "The policy does not prescribe a specific method of computation nor require a specific method of estimation." (*Id.* ¶ 25.) Accordingly, a breach of contract claim cannot be based on the "specific method of estimation" they contend State Farm should have used, *i.e.*, the "repair/reconstruction" setting in Xactimate's estimating software.

Even if State Farm were contractually obligated to use a particular Xactimate setting (it was not), Plaintiffs' pleading establishes State Farm's use of the "new construction" setting was entirely appropriate for their loss. Plaintiffs admit Xactimate's "new construction" setting is used for "'ground-up' reconstruction *or large partial losses* …" (SAC ¶ 42 (emphasis added).) This is confirmed by the Xactware summary quoted in the SAC, which states: "portions of *a large partial loss* can be addressed by selecting the 'New Construction' labor efficiency …" (Dkt.

24-4 p. 3 (emphasis added).)[1] Plaintiffs do not, and cannot, deny their "catastrophic" fire loss was a large partial loss, and thus appropriately estimated using Xactimate's "new construction" setting.

**B. Plaintiffs Do Not Allege a Plausible Breach of State Farm's Indemnity Obligation.**

Plaintiffs cite their Policy's "cost to repair or replace" language, but they overlook the rest of that provision. State Farm agreed to "pay the cost to repair or replace" the damaged property "***subject to***" to a two-step loss settlement provision: (1) "until actual repair or replacement is completed, [State Farm] will pay only the actual cash value" of the damaged property ("ACV"); and (2) "when the repair or replacement is actually completed, [State Farm] will pay the covered additional amount you [Plaintiffs] actually and necessarily spend" on repairs, provided the work is completed "within two years" of the loss and State Farm is notified "within 30 days" after the work's completion ("replacement cost benefits"). (Policy P029 (emphasis added).) *See, e.g., Papurello v. State Farm Fire & Cas. Co.*, 144 F. Supp. 3d 746, 767 (W.D. Pa. 2015) (explaining two-step provision). While Plaintiffs conclusorily assert a breach of the cost of repair obligation, they identify no breach of either step.

---

[1] The Court may consider this document filed by Plaintiffs because it is quoted and relied on in the SAC (¶ 41). *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

### 1. *Plaintiffs Cannot Challenge the Sufficiency of State Farm's ACV Payments.*

Plaintiffs cannot allege State Farm failed to pay the ACV amount of their loss, because that amount was "established" by an appraisal award (SAC ¶ 79(k)), which Plaintiffs do not and cannot allege State Farm failed properly to pay. The appraisal award binds the parties and bars any subsequent challenge to the sufficiency of State Farm's ACV payments. *See Ice City, Inc. v. Ins. Co. of N. Am.*, 314 A.2d 236, 240 (Pa. 1974).

Plaintiffs cannot state a breach of contract claim based on a dispute resolved by appraisal. *See Dagit v. Allstate Prop. & Cas. Co.,* No. 16-3843, 2017 WL 395489, at *3-*4 (E.D. Pa. Jan. 30, 2017) (dismissing breach of contract claim as barred by appraisal). The parties disagreed on the amount of the ACV. (SAC ¶¶ 65, 66.) To resolve this disagreement, Plaintiffs agreed to appraisal under the Policy (*id.* ¶ 67), which states: "If you and we disagree on the amount of loss, either one can demand that the amount of the loss be set by appraisal." (Policy P032 ¶ 4.) State Farm certainly had no obligation to pay the amount estimated by Plaintiffs. (*Id.* ¶ 8.) *Cf. Vista Pointe Townhome Assoc. Inc. v. Auto-Owners Ins. Co.,* No. 16-CV-0973-MSK-NYW, 2017 WL 4772859, at *2 (D. Colo. Oct. 23, 2017) (where appraisal is invoked, the ACV claim remains "unliquidated" and the insurer's "duty to pay" has not "mature[d] (much less is breached)."). In fact, the appraisal award was significantly less than Plaintiffs had estimated. (*See* SAC ¶¶ 66, 70, Ex. 3 p. 2.)

The fact that the appraisal panel ultimately assigned a higher value to the claim than State Farm's estimate (but far lower than Plaintiffs' estimate) clearly does not mean State Farm breached the Policy, much less acted in bad faith, "either in arriving at its initial estimate or by standing by that estimate until the appraisal process concluded. That is, after all, what the appraisal process is for—settling disputes about the value of a claim." *Mirarchi v. Seneca Specialty Ins. Co.*, 564 F. App'x 652, 656 (3d Cir. 2014) (citation omitted). *See also Hometown Cmty. Ass'n, Inc. v. Phila. Indem. Ins. Co.*, No. 17-CV-00777-RBJ, 2017 WL 6335656, at *4 (D. Colo. Dec. 12, 2017), *on reconsideration in part,* No. 17-CV-00777-RBJ, 2018 WL 2008853 (D. Colo. Apr. 30, 2018) (dismissing breach of contract claim: "[T]hough [plaintiff] may have disagreed with [the insurer's] … initial actual cash value amount, such a disagreement is contemplated in the insurance policy, and the appraisal process exists to address just such disagreements").

### 2. *Plaintiffs Do Not State a Claim for Entitlement to Replacement Cost Benefits.*

Plaintiffs also now claim, for the first time in the SAC, that they are entitled to an RCV "holdback" in the appraisal award of $26,738.20. (SAC ¶¶ 71, 109.) The award determined that the total "RCV" (*i.e.*, estimated actual repair costs) of the loss was $268,879.70 (Ex. 3 p. 2), and the total "ACV" was $240,643.84, meaning there was a maximum amount of $26,738.20 that arguably could also be recovered as additional replacement cost benefits (*i.e.,* "recoverable depreciation," SAC ¶ 71), if

incurred and payable under the terms of the Policy. Plaintiffs have not stated a claim they are entitled to recover these benefits under the Policy. Here's why.

After receiving the ACV amount set by the award, Plaintiffs would only be entitled to receive the "additional amount" they "actually and necessarily" spent on repairs completed "within two years" of the loss, and then only if State Farm received notice of the repairs "within 30 days" of the work's completion. (Policy P029-30). Plaintiffs do not allege that they have met any of these requirements, as they are required to do to state a plausible claim for replacement cost benefits.

Instead, Plaintiffs allege only that, at some point in time, they "elected to rebuild [a] dwelling at another location with an equivalent building intended for equivalent use." (SAC ¶ 72.) They do not allege that they made covered repairs, that State Farm's ACV payments were insufficient to cover the costs of these repairs, that repairs were completed within two years of their loss, or that they notified State Farm within 30 days of completing the work. Plaintiffs thus fail to allege the preconditions for replacement cost benefits, much less that State Farm breached an obligation to pay them. *See Seto v. State Farm Ins. Co.*, No. 2:10-CV-00505, 2012 WL 1836086, at *3 (W.D. Pa. May 21, 2012) (dismissing replacement cost claim where Plaintiffs admitted "they did not replace, rebuild, or repair the subject dwelling" but instead "razed the dwelling and sold the property"); *Stiers v. State Farm Ins.*, No. 3:11-CV-437, 2012 WL 2405982, at *4 (E.D. Tenn. June 25, 2012)

(dismissing contract claim where plaintiff did not dispute "the final amount paid was sufficient to cover the amounts they actually spent to complete the repairs to their home").

## II.     PLAINTIFFS FAIL TO STATE A CLAIM OF BAD FAITH (COUNT I).

Because Plaintiffs' breach of contract claim fails, their bad faith claim should be dismissed as well. *See Ash v Cont'l Ins. Co.,* 932 A.2d 877, 882 (Pa. 2007) (section 8371 requires "an action arising under an insurance policy") (quoting statute); *Nye v. State Farm Mut. Auto. Ins. Co.*, No. 3:21-CV-01029, 2022 WL 969620, at *4 (M.D. Pa. Mar. 30, 2022) ("dismissal of the breach of contract claim removes the predicate cause of action otherwise required to accompany the section 8371 claim.").

Plaintiffs also fail to plausibly allege bad faith. To establish a bad faith claim, "a plaintiff must demonstrate, by clear and convincing evidence, (1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew or recklessly disregarded its lack of a reasonable basis in denying the claim." *Rancosky v. Washington Nat'l Ins. Co.*, 170 A.3d 364, 377 (Pa. 2017). A "plaintiff must plead specific facts as evidence of bad faith and cannot rely on conclusory statements." *Toner v. GEICO Ins. Co.*, 262 F. Supp. 3d 200, 208 (E.D. Pa. 2017); *see also Smith v. State Farm Mut. Auto. Ins. Co.*, 506 F. App'x 133, 136 (3d Cir. 2012).

Plaintiffs' bad faith claim simply lists alleged violations unsupported by specific facts. (SAC ¶ 79.) "[C]ourts in this circuit have consistently held the same or similar list of violations to be conclusory, rather than factual." *Houston v. GEICO Advantage Ins. Co.*, No. CV 22-35, 2022 WL 2834342, at *2 (W.D. Pa. July 20, 2022) (collecting cases). Plaintiffs' conclusory allegations of bad faith should be dismissed. *Dayton v. Auto. Ins. Co. of Hartford, Conn.*, No. CV 3:20-1833, 2021 WL 5163221, at *4 (M.D. Pa. Nov. 5, 2021) (rejecting "purely conclusory statements, comprising of boiler-plate language that courts have deemed insufficient to support a bad faith claim"); *Camp v. New Jersey Mfrs. Ins. Co.*, No. CV 16-1087, 2016 WL 3181743, at *4 (E.D. Pa. June 8, 2016) (same; collecting cases).

Further, most of Plaintiffs' claimed violations relate to State Farm's use of "new construction" numbers in their estimate (SAC ¶¶ 79(a)-(c), (e)-(h), (k), (n)-(o), (q)-(r).) Mere disagreements about a claim's evaluation are "not unusual" and do not constitute bad faith. *Smith,* 506 Fed. App'x. at 137; *Shaw v. USAA Cas. Ins.*, No. CV 3:17-947, 2018 WL 2183272, at *8 (M.D. Pa. May 11, 2018); *Warnstorff v. State Farm Auto. Ins. Co.*, No. 3:14-0077, 2014 WL 2808604, at *3 (M.D. Pa. June 19, 2014).

Other claimed violations relate to alleged corruption of the appraisal process. (SAC ¶¶ 79 (j), (l), (m), (p).) Because Plaintiffs did not seek review of the appraisal award within 30 days, they are barred from raising such allegations now. *See Riley*

*v. Farmers Fire Ins. Co*., 735 A.2d 124, 130 (Pa. Super. Ct. 1999). The appraisal award also was entered with the agreement of Plaintiffs' chosen appraiser, making these conclusory allegations implausible.[2] (*See* Ex. 3 p. 2.)

Plaintiffs allege the appraisal was "unnecessary" (SAC ¶¶ 79(d), (i)), but it is the "favored practice" for settling disputes over the amount of loss, *Ice City,* 314 A.2d at 240, and it is specifically provided for in the Policy. (Policy P032.) Appraising disputed ACV amounts is a contractual right, not bad faith. *Mirarchi,* 564 F. App'x at 656.

## III. PLAINTIFFS FAIL TO STATE A CLAIM FOR VIOLATION OF THE ILLINOIS CONSUMER FRAUD ACT (COUNT II).

### A. The ICFA Does Not Apply to Plaintiffs.

The ICFA "does not have extraterritorial effect." *Avery v. State Farm Mut. Auto. Ins. Co.,* 835 N.E.2d 801, 853 (Ill. 2005). Non-resident parties such as Plaintiffs "may sue under ICFA only if the circumstances relating to the alleged fraudulent transaction occurred mostly in Illinois." *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 396 (7th Cir. 2009) (citing *Avery*). Plaintiffs allege no facts connecting their claims to the State of Illinois apart from the fact that State Farm is headquartered in Illinois and issued its policies from there (SAC ¶¶ 3, 97), which is insufficient for an ICFA claim. *See Sieving v. Cont'l Cas. Co.*, 535 F. Supp. 3d 762,

---

[2] Plaintiffs allege an umpire was selected (SAC ¶ 69), but they omit that the umpire was never needed because the appraisers agreed on the award.

771 (N.D. Ill. 2021) ("the administration of [a] defendant's business in Illinois" and even "dissemination" of allegedly deceptive documents from Illinois "is insufficient to give a nonresident plaintiff a claim").

Plaintiffs entered into their insurance contract in Pennsylvania, submitted their homeowner claims there, and were allegedly deceived there. Their ICFA claim must be dismissed. *See Avery*, 835 N.E.2d at 855; *Crichton*, 576 F.3d at 397 (affirming dismissal of ICFA claim by Florida resident); *Gridley v. State Farm Mut. Auto. Ins.,* 840 N.E.2d 269, 275 (Ill. 2005) (as in *Avery,* "the majority of circumstances … occurred primarily and substantially in Louisiana, [plaintiff] did not have a cognizable cause of action under the Illinois Consumer Fraud Act").

Even if Plaintiffs could somehow argue for extraterritorial application of ICFA, they would lack standing to assert claims under that Illinois statute on behalf of a nationwide class. (*See* SAC ¶ 84.) Numerous courts in this Circuit have held plaintiffs cannot assert claims on behalf of individuals in other states where no named representatives reside, and where none suffered any alleged injury. *See In re: Niaspan Antitrust Litig.*, No. 13-MD-2460, 2015 WL 8150588, at *3 (E.D. Pa. Dec. 8, 2015) (collecting cases); *Xi Chen Lauren v. PNC Bank, N.A.*, 296 F.R.D. 389, 391 (W.D. Pa. 2014); *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 152 (E.D. Pa. 2009).

**B.      The ICFA Claim is Preempted by Insurance Code Section 155.**

Even if Plaintiffs could bring an ICFA claim, it would be barred by Illinois

Insurance Code, 215 ILCS 5/155, which "provides an extracontractual remedy to

policyholders whose insurer's refusal to recognize liability and pay a claim under a

policy is vexatious and unreasonable." *Cramer v. Ins. Exch. Agency*, 675 N.E.2d

897, 900 (Ill. 1996).  Under Illinois law, when the conduct alleged for an ICFA claim

"is merely a breach of contract or conduct proscribed by section 155, a Consumer

Fraud Act claim on that basis is preempted by section 155."  *Cook ex rel. Cook v.

AAA Life Ins. Co.*, 13 N.E.3d 20, 33 (Ill. App. Ct. 2014); *see also Leona's Pizzeria,

Inc. v. Nw. Nat. Cas. Co.*, 203 F. Supp. 2d 930, 933 (N.D. Ill. 2002) (claim that an

insurer is "lying" to "'avoid paying [a] claim' amounts to no more than claim for

denial of benefits and breach of contract, and is preempted by § 155").  Plaintiffs

make conclusory allegations of "misrepresentations" and "deceptive acts," but the

only specific conduct referenced in their ICFA claim is State Farm's use of the "new

construction" setting—which is the same allegation that forms the basis for

Plaintiffs' claim for breach of contract.  (SAC ¶¶ 92, 96.)  Thus, their ICFA claim

would be pre-empted by Section 155 even if it could be asserted.

**C.      Plaintiffs Fail to Adequately Allege an ICFA Claim.**

Plaintiffs additionally fail to sufficiently plead the elements of an ICFA claim.

"To state a claim under the ICFA, Plaintiff must allege: (1) a deceptive act or practice

by Defendant; (2) Defendant's intent that Plaintiff rely on the deception; (3) that the deception occurred in the course of conduct of trade or commerce; (4) actual damage to Plaintiff; and (5) that the damage was proximately caused by Defendant." *New Park Manor, Inc. v. N. Pointe Ins. Co.*, No. 13 C 4537, 2013 WL 5408856, at *4 (N.D. Ill. Sept. 26, 2013). Because Plaintiffs allege fraud under the ICFA (*see* SAC ¶¶ 89-96), their allegations "must be pleaded with the same particularity as common law fraud and must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b)." *Id.* (citation omitted). To meet this heightened standard, Plaintiffs must allege "the identity of the person making the representation, the time, place and contents of the misrepresentation, and the method by which the misrepresentation was communicated." *Id.*

The SAC supplies none of this information. Plaintiffs offer only conclusory allegations of "misrepresentations" and "omissions" (SAC ¶¶ 89-92), which fail to satisfy the notice standard of Rule 8, much less the heightened pleading standard of Rule 9(b). These allegations "are nothing more than restatements of the claimed breach of contract, albeit using the language of fraud." *Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 399 (7th Cir. 2011).

Additionally, the SAC still does not explain how Plaintiffs purportedly relied upon any deceptive conduct by State Farm, nor any resulting damages therefrom. Plaintiffs cannot claim they were unaware State Farm used the "new construction"

setting because the first page of State Farm's estimate states such pricing was used. (*See* Ex. 2 p. 3.)  It also reflects that Plaintiffs were represented by a public adjuster (*id.*), who complained about State Farm's use of the "new construction" setting. Plaintiffs' ICFA claim fails for all these reasons as well.

## IV.   PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH (COUNT IV).

"Pennsylvania does not recognize a separate breach of contractual duty of good faith and fair dealing where said claim is subsumed by a separately pled breach of contract claim." *Simmons v. Nationwide Mut. Fire Ins. Co.*, 788 F. Supp. 2d 404, 409 (W.D. Pa. 2011).  In cases involving first-party claims for insurance benefits, courts have applied this rule to hold that a claim for breach of the duty of good faith and fair dealing "is subsumed by the plaintiff's breach of insurance contract claim premised on the same conduct."  *Id.* (collecting cases); *Ridolfi v. State Farm Mut. Auto. Ins. Co.*, No. 1:15-CV-859, 2017 WL 4418423, at *5 (M.D. Pa. Oct. 5, 2017) (same); *Monck v. Progressive Corp.*, No. 3:15-CV-250, 2015 WL 1638574, at *4 (M.D. Pa. Apr. 13, 2015) (same).  The Pennsylvania Supreme Court has similarly held that "there is no cause of action for a breach of the implied duty of good faith and fair dealing in a case for first party insurance benefits, like this one, where an insured is suing his insurer." *Cicon v. State Farm Mut. Auto. Ins. Co.,* No. 3:14-CV-2187, 2015 WL 926148, at *2 (M.D. Pa. Mar. 4, 2015) (citing *D'Ambrosio v. Pa. Nat'l Mut. Ins. Co.*, 431 A.2d 966, 970-71 (Pa. 1981)).

Plaintiffs' breach of the implied covenant of good faith and fair dealing claim (Count IV) is premised on the same alleged misconduct as their breach of contract claim (Count III). Indeed, the operative language of each claim is virtually identical. *Compare* SAC ¶ 121 *with* ¶ 115. Because the two claims rely upon the same alleged conduct, Plaintiffs' implied covenant claim is subsumed into their contract claim and should be dismissed.

## V. PLAINTIFFS FAIL TO STATE A CLAIM FOR DECLARATORY RELIEF (COUNT V).

Plaintiffs fail to state a claim for declaratory relief because they have not sufficiently pled a breach of contract, which is the predicate for their request for a declaration that State Farm breached their Policy. (SAC ¶ 128.) Plaintiffs' declaratory relief claim is also entirely duplicative of their contract claim and should be dismissed for that reason as well. *See Butta v. GEICO Cas. Co.*, 400 F. Supp. 3d 225, 233, 236 (E.D. Pa. 2019); *U.S. v. Vantage Tr. Fed. Credit Union*, No. 3:17-CV-0348, 2018 WL 306920, at *7 (M.D. Pa. Jan. 5, 2018).

## VI. PLAINTIFFS FAIL TO STATE A CLAIM FOR VIOLATION OF THE UPTCPL (COUNT VI).

### A. Plaintiffs' Claims Are Outside the UTPCPL.

Plaintiffs' UTPCPL claim should be dismissed because that statute does not apply to alleged mishandling of insurance claims. "Allegations of misconduct in the claims handling process are not actionable under the UTPCPL." *Kerr v. State Farm Mut. Auto. Ins. Co.*, No. CV 18-309, 2018 WL 5809989, at *6 (W.D. Pa. Nov. 6,

2018) (citation omitted); *Mondron v. State Farm Mut. Auto. Ins. Co.*, No. CV 16-412, 2016 WL 7384183, at \*5 (W.D. Pa. Dec. 21, 2016) (same).

Plaintiffs' claim also fails because they allege nonfeasance, rather than malfeasance. "In Pennsylvania, only malfeasance, the improper performance of a contractual obligation, raises a cause of action under the [UTPCPL]." *Gardner v. State Farm Fire & Cas. Co.*, 544 F.3d 553, 564 (3d Cir. 2008). "[A] claim for failure to pay the full amount and for failure to investigate . . . are forms of nonactionable 'nonfeasance' under the UTPCPL." *Ke v. Liberty Mut. Ins. Co.*, No. CV 20-1591, 2020 WL 7353892, at \*7 (E.D. Pa. Dec. 14, 2020). Because Plaintiffs' UTPCPL claim rests upon the allegation that State Farm is guilty of "undervaluing the adjustment of the loss" (SAC ¶ 141), the claim alleges nonfeasance and is not actionable under the UTPCPL.

### B. Plaintiffs Do Not Plead the Elements of a UTPCPL Claim.

Plaintiffs also fail to sufficiently plead a UTPCPL claim. The SAC does not identify which UTPCPL provision is claimed to be violated, but Plaintiffs appear to rely on the catch-all provision: 73 Pa. C.S. § 201-2(4)(xxi). To state a claim under that provision, Plaintiffs must identify "affirmative deceptive acts by [defendant] upon which the plaintiffs justifiably relied to their financial detriment," *Angino v. Wells Fargo Bank, N.A.*, No. 1:15-CV-418, 2016 WL 787652, at \*11 (M.D. Pa. Feb. 19, 2016), *report and recommendation adopted*, 2016 WL 759161, *aff'd*, 666 F.

App'x 204 (3d Cir. 2016), and they must plead fraud with the particularity required by Rule 9(b).  *See Seldon v. Home Loan Svcs., Inc.*, 647 F. Supp. 2d 451, 470 n. 11 (E.D. Pa. 2009) (citing *Christopher v. First Mut. Corp.*, No. Civ.A. 05–01149, 2006 WL 166566, at *3 (E.D. Pa. Jan. 20, 2006)); *Cheatle v. Katz*, No. Civ. A. 02–4405, 2003 WL 21250583, at *8 (E.D. Pa. Apr. 1, 2003) (same).

The Complaint is devoid of any factual, non-conclusory allegations indicating that Plaintiffs justifiably relied upon any misrepresentations by State Farm or any damages resulting therefrom.  *See, e.g., Bolus v. Nationwide Prop. & Cas. Co.,* No. 3:16-CV-00753, 2018 WL 1474669, at *4 (M.D. Pa. Mar. 26, 2018) (UTPCPA claim failed because insured's alleged damages were caused by adjustment of claim, not by alleged misrepresentations).  Plaintiffs' UTPCPL claim vaguely refers to "deceptive acts" (SAC ¶ 138), but no such acts are factually alleged, and certainly not with the particularity required by Rule 9(b).  Plaintiffs also fail to allege that they justifiably relied on such deceptive acts, as required by Pennsylvania Supreme Court and Third Circuit precedent.  *See Hunt v. U.S. Tobacco Co*., 538 F.3d 217, 222 (3d Cir. 2008), *as amended* (Nov. 6, 2008).[3]  Their UTPCPL claim thus must be dismissed.

---

[3] Courts have recognized that allegations of reliance are implausible with first party insurance claims because such claims "are inherently and unavoidably arm's length and adversarial." *Smith v. State Farm Mut. Auto. Ins. Co.*, No. 11-7589, 2012 WL 508445, at *4 (E.D. Pa. Feb. 16, 2012) (citation omitted), *aff'd,* 506 F. App'x

## VII. PLAINTIFFS' CLAIMS FOR DECLARATORY AND INJUNCTIVE RELIEF SHOULD ADDITIONALLY BE DISMISSED UNDER RULE 12(b)(1).

Plaintiffs also lack standing to assert their claim for declaratory relief (Count V) and their requests for injunctive relief under the ICFA and the UTPCPA (SAC ¶¶ 99, 146), because they face no risk of sustaining future injury by State Farm's challenged estimation methods. It is well settled that "a party seeking equitable relief for a prospective injury . . . must show a 'likelihood of substantial and immediate irreparable injury' to establish standing." *Sherwin-Williams Co. v. Cty. of Delaware, Pa.*, 968 F.3d 264, 269 (3d Cir. 2020) (citation omitted). Plaintiffs' requests for declaratory and injunctive relief are tied to an injury that supposedly occurs when State Farm uses a "new construction" labor efficiency setting to estimate repairs for partial losses. (SAC ¶¶ 92, 128, 141.) Plaintiffs are not at risk of sustaining such a future injury because they are no longer State Farm insureds. (*See* Ex. 4 ¶ 3.)

Numerous courts have recognized that plaintiffs who are no longer insured by the defendant lack standing to seek equitable relief. *See, e.g., Jonathan Z. v. Oxford Health Plans*, No. 2:18-cv-00383-JNP-JCB, 2022 WL 3227909, at *3 (D. Utah Aug. 9, 2022); *Sullivan v. Liberty Mut. Ins. Co.*, No. 21 C 6084, 2022 WL 2105904, at *5

---

133 (3d Cir. 2012); *see also Monck,* 2015 WL 1638574, at *7 (M.D. Pa. Apr. 13, 2015) (same).

(N.D. Ill. June 10, 2022); *NBL Flooring, Inc. v. Trumbull Ins. Co.*, No. 10-4398, 2014 WL 615967, at *4 (E.D. Pa. Feb. 12, 2014); *Reid v. BCBSM, Inc.*, 984 F. Supp. 2d 949, 953–54 (D. Minn. 2013); *Clark v. Prudential Ins. Co. of Am.*, 736 F. Supp. 2d 902, 924 (D.N.J. 2010). Accordingly, Plaintiffs' requests for declaratory and injunctive relief should be dismissed.

Dated: November 15, 2022        Respectfully submitted,

/s/ *Yolanda Konopacka DeSipio*
Yolanda Konopacka DeSipio
BENNETT, BRICKLIN & SALTZBURG
LLC
960 Harvest Drive
Building B-Suite 100
Blue Bell, PA 19422
(267) 654-1100
desipio@bbs-1aw.com

Joseph A. Cancila, Jr.
Nick Kahlon (*pro hac vice*)
RILEY SAFER HOLMES & CANCILA
LLP
70 W. Madison Street, Suite 2900
Chicago, IL 60602
(312) 471-8700
jcancila@rshc-law.com
nkahlon@rshc-law.com

*Attorneys for Defendant*
*State Farm Fire and Casualty Company*

# CERTIFICATION OF WORD COUNT

I, YOLANDA KONOPACKA DESIPIO, the undersigned, hereby certify subject to Fed. R. Civ. P. 11 that the foregoing brief (excluding the cover page, tables of contents and authorities, signature block and certifications) complies with the 5,000 word-count limit in Local Rule 7.8(b)(2). According to the word count feature of the Microsoft Word word-processing system used to prepare the brief, the word count is 4,965.

Dated: November 15, 2022

/s/ *Yolanda Konopacka DeSipio*
Yolanda Konopacka DeSipio

## CERTIFICATION OF NON-CONCURRENCE

    I, YOLANDA KONOPACKA DESIPIO, the undersigned, hereby certify that counsel for Defendant, State Farm Fire and Casualty Company, has sought concurrence from counsel for Plaintiffs in connection with State Farm's Motion to Dismiss Plaintiffs' Second Amended Complaint and Plaintiffs do not concur.

Dated:  November 15, 2022

*/s/ Yolanda Konopacka DeSipio*    
Yolanda Konopacka DeSipio
