**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JAMIE BELOTTI and BECKY BELOTTI** : | | |
| Plaintiffs, | : | |
| | : | CIVIL ACTION NO. |
| vs. | : | 3:22-cv-01284- MEM |
| | : | |
| | : | |
| **STATE FARM FIRE AND** | : | |
| **CASUALTY COMPANY** | : | |
| Defendant. | : | |

**PLAINTIFFS, JAMIE BELOTTI AND BECKY BELOTTI'S OPPOSITION TO**
**STATE FARM FIRE AND CASUALTY COMPANY'S MOTION TO DISMISS THE**
**SECOND AMENDED COMPLAINT**

Plaintiffs, Jamie Belotti and Becky Belotti oppose the Second Motion of Defendant, State Farm Fire and Casualty Company to dismiss the Second Amended Complaint ("SAC") pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1). Defendant argues that the Court should dismiss the SAC in its entirety, because 1) Plaintiff has not asserted sufficient facts for a bad faith claim, 2) has not stated a valid claim for violation of the Illinois Consumer Fraud Act, 3) is not entitled to declaratory relief, 4) does not state a viable claim for breach of contract, and 5) Plaintiffs have not incurred substantial additional cost. The Court should reject these arguments for the reasons set forth herein.

## I. BACKGROUND

Plaintiffs filed this action containing contractual and extra-contractual/statutory bad faith counts, as well as other claims pertaining to an insurance claim they submitted to Defendant as a result of a fire loss occurring at their residential premises on September 24, 2019. Defendant filed a Motion to Dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiffs filed a Second Amended Complaint on November 1, 2022. Defendant filed a Motion to Dismiss the Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1).

## II. LEGAL STANDARD

A Motion to Dismiss for Failure to State a Claim pursuant to Fed. R. Civ. P. 12(b)(6) "tests the legal sufficiency of a Complaint." *Jones v. HCA,* 16 F. Supp. 3d 622, 628 (E.D. Va. 2014). To survive such a motion, a Complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell At. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "[A] claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Jones,* 16 F. Supp. 3d at 628 (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)).

## III. ARGUMENT

### POINT I

### PLAINTIFFS HAVE ASSERTED SUFFICIENT FACTS TO SUPPORT THEIR STATUTORY BAD FAITH CLAIM

The Pennsylvania Legislature enacted Pennsylvania's bad faith statute, 42 Pa. C.S. § 8371 to address circumstances where an insurer fails to act in good faith in response to an insurance claim.

The Pennsylvania Supreme Court has held that, "in order to recover in a bad faith action, the Plaintiff must present clear and convincing evidence (1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew of or recklessly disregarded its lack of a reasonable basis." *Rancosky v. Washington Nat'l Ins. Co*., 170 A.3d 364, 365 (Pa. 2017) (adopting test first articulated in *Terletsky v. Prudential Property & Cas. Ins. Co*., 649 A.2d 680 (Pa. Super. 1994)). Further, "proof of an insurer's motive of self-interest or ill-will, while potentially probative of the second prong, is not a mandatory prerequisite to bad faith recovery under Section 8371." Id. at 377.

In this case, the Plaintiffs will establish at trial that a significant fire caused catastrophic destruction to their residential premises and personal property and caused them to sustain other losses. The Plaintiffs submitted a first party claim to Defendant, which has yet to be fully paid. The Plaintiffs are also prosecuting statutory bad faith claims, as set forth in Paragraphs 52, 53, 54, 55, 56, 78-81 of the SAC, with specificity. The Defendant argues that the Plaintiffs' bad faith claims should be dismissed, as they provide only a conclusory laundry-list of alleged violations without supporting facts. To the contrary, the Plaintiffs' Complaint alleges, *inter alia*, that the Defendant low-balled their insurance claim, which was proven by an Appraisal Award substantially in excess of the amount that Defendant was willing to pay. The Plaintiffs also aver, with specificity, that the Defendant improperly interfered with and attempted to corrupt the appraisal process, arbitrarily changed and edited its building consultant's report in order to severely undervalue the Plaintiffs' claim, sought to obtain a release of the extra-contractual claims as a condition of making contractual payments, and engaged in a pattern of conduct in its estimating software by attempting to manipulate the application such that the Plaintiffs' loss would be characterized as "new construction", rather than restoration/service/remodel, such that the Plaintiffs' claim would have been substantially undervalued. None of these allegations are conclusory, and they only read as a laundry list due to the massive scope of the Defendant's unreasonable, bad faith response and mishandling of the Plaintiffs' claim.

**POINT II**

**COUNT II FOR VIOLATION OF THE**
**ILLINOIS CONSUMER FRAUD ACT STATES A VALID CLAIM**

At Count II of the SAC (Dkt. 25) (¶¶ 83-99) Plaintiffs allege, separate and apart from contractual policy breaches, a series of "unfair or deceptive acts and practices". Plaintiffs allege that these actions and practices are actionable under the Illinois Consumer Fraud and Deceptive Business Practices Act. SAC 97-99. Defendant argues that the ICFA claim should be dismissed first because "it does not have extra-territorial effect" Deft. Br. at 12; second because it is pre-empted by Illinois

Insurance Code, 215 ILCS 5/155 (Defts at 14) because plaintiff's claim is "merely a breach of contract or conduct proscribed by Section 155." *Id*. at 14 and relies on the same "specific contract" that forms the basis of plaintiffs breach of contact claim. Id. Should these arguments fail, Defendant argues, Plaintiffs' "fail to adequately allege an ICFA claim" because plaintiffs have not included evidentiary detail regarding the identity of the persons making misrepresentations, the place and content and the method of communication, defendants also contend that there is no showing of reliance on their alleged deceptive intent despite the fact that the Federal Rules of Civil Procedure do not require that level of detail in a pleading..

The Illinois Consumer Fraud Act declares ". . . unlawful"… "unfair methods of competition and unfair or deceptive acts or practices. . ." ICFA protects "consumers, borrowers, and businesspersons against fraud, unfair methods of competition and other unfair and deceptive business practices." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 9334 (7th Cir. 2010). "The CFA was intended to afford a broader range of protection than the common law [citations omitted] and to curb fraudulent abuses, while eradicating deceptive and unfair practices . . . "the elements necessary to establish fraud under the CFA are less stringent than elements necessary to establish common law fraud." [citations omitted] *Avery v. State Farm,* 746 N.E. 2d 1242  (Ill). App. 194, 213. (2001)

As to extra-territoriality, Defendant argues that there are "no facts connecting their claims to the State of Illinois apart from the fact that State Farm is headquartered there and issues policies." Deft. Br. at 12. Accordingly, Defendants argue, under *Avery v. State Farm Mutual Auto Ins. Co.*, 835 N.E. 2d 801, 853 (Ill. 2005); *Crichton v. Golden Rule Ins. Co.*, 576 F.2d 392, 396 (7th Cir. 2009); *Gridley v. State Farm Mut. Auto Ins.*, 840 N.E. 2d 269, 275 (Ill. 2005); *Sieving v. Cont'l Cas. Co.*, 535 F. Supp. 3d 762, 771 (N.D. Ill. 2021), the ICFA claim must be dismissed. However, deciding that issue on a Rule 12 (b)(6) motion would be inappropriate. This is a "highly fact-based inquiry in which no single factor would be dispositive." Crichton at 396

State Farm misstates the pleading. Plaintiffs allege more than "headquarters" allegations as a basis for application of the ICFA. *See* SAC ¶¶ 19, 20, 21,97. The Policy was signed by State Farms corporate officers <u>in</u> Bloomington, Illinois. (*See* ECF 27-2 43 of 44) which demonstrates that the policy language with its allegedly deceptive language was formulated in Illinois and also that the signing of the contract, an essential act for validity of the insurance contract, took place in Illinois.  Illinois state courts and federal courts within Illinois have applied the ILCFA on behalf of out of state resident against an Illinois Defendant where conduct occurs in Illinois. In *Avery v. State Farm Mutual Automobile Insurance Company*, 321 Ill. App. 3d 269 (App. Ct 5th District 2001) Fifth District Appellate Court held:

> "The CFA does not limit its application to resident consumers. To deny an out-of-state plaintiff a remedy against a resident of Illinois would violate the legislative directive that the CFA be liberally construed to achieve its remedial purposes. Non Illinois consumers have been permitted to pursue an action under the CFA against a resident defendant where the deceptive acts and practices were perpetrated in Illinois."

*Avery supra* at 281 citing the Illinois Supreme Court in *Martin v. Heinbold Commodities, Inc.*, 117 Ill. 2d 67, 83, 109 Ill. Dec. 772, 510 N.E. 2d 840, 847 (1987).On appeal to the Illinois Supreme Court, *Avery v. State Farm*, 216 Ill. 2d 100, 296 Ill. Dec. 448, 835 N.E. 2d 801, (2005) the Illinois Supreme Court affirmed in part and reversal in part but agreed with the Appellate Court's recitation of the law:

> We agree with the appellate court that the place where a company policy is created or where a form document is drafted may be a relevant factor to consider in determining "[whether ICFA] should be applied."

Here the SAC explicitly alleges that State Farm corporate headquarters controls the practices alleged herein. SAC ¶¶ 19, 20, 21 and 97. State Farm's policy was in fact signed by Defendant's "Secretary" and "President" *see* ECF 27-2 page 44 of 44. The policy itself states "this Company has caused this policy to be signed by its President and Secretary at Bloomington, Illinois." *Id.* State Farm's citations do not favor dismissal. In *Avery*, the Court justified application of law to a non-resident's claims for insured auto repairs by noting: "There is substantial evidence that the deceptive claims

practices were designed, established, and initiated from State Farm's corporate headquarters in Bloomington, Illinois and dictated and disserted . . . nationwide" *Id.* at 284.Likewise, *Crichton, Gridley* and *Sieving* are distinguishable also. In *Crichton*, the defendant's principal place of business was in Indiana, the plaintiff residence was Florida and the claim was based on fraudulent marketing materials distributed in Florida. In *Gridley*, the Illinois Supreme Court held that a Louisiana insured could not assert an ICFA claim against the Illinois defendants because the claims involved compliance with state salvage laws which the facts demonstrated were <u>not</u> handled at State Farm's Bloomington headquarters. Id at *166. In *Sieving*, the district court held that the ICFA could not apply to a California resident because the claims arose out of the dissemination of marketing materials in California, not on the underlying policy regulation. Id at 771.

Defendants further argue that even if Plaintiffs themselves could argue for extraterritorial application of the ICFA, plaintiff would not have standing to represent class members in states without a class representative from that state such claims could not be asserted on behalf of individuals in states other than where Plaintiffs reside or have suffered injury. *Id.* at 12, n.3. In support, Defendant cites: *In re Niaspan Antitrust Litigation*, 2015 WL 8150588 (E.D. Pa., Dec. 8, 2015); *Xi Chen Lauren v. PNC Bank, N.A.*, 296 F.R.D. 389, 391 (W.D. Pa. 2014); and *In Re Wellbutrin XL Antitrust Litigation*, 260 F.R.D. 143, 158 (E.D. Pa. 2009). The district courts in *Niaspan*, *Wellbutrin* and *PNC Bank* all held that a plaintiff could not assert class claims for all class members under each class members state laws unless the named plaintiff also had a claim under that state's law. The *PNC* court (citing *Wellbutrin* )explained that the plaintiff must have standing to assert the claim it seeks to assert on behalf of the class. Wellbutrin at 52. PNC at 391.

Prima facie, a nationwide class of insureds or a multi-state class can be certified. "A multi-state class action based on the Consumer Fraud Act is not a novelty in Illinois" *P.J.'s Concrete Pumping Service, Inc. v. Nextel West Corp.*, 345 Ill. App. 3d 992, 1003 (Ill. App. 2004) citing *Gordon v. Boden*, 586 N.E. 2d 461 (Ill. App. Ct. 1991) appeal denied (591 N.E. 2nd 21 (Ill. 1992), *cert denied*,

*Bodines, Inc. v. Gordon*, 113 S. Ct. 303 (1992); *Fay v. UAL Corp.*, 136 F.R.D. 626, 637 (N.D. Ill. 1991). Moreover, arguments about the proper composition of the class should await class certification.

State Farm also argues that the ICFA sounds in contract only and therefore must be dismissed. *Id*. at 13. The allegations of the SAC clearly demonstrate that the allegations supporting the ICFA go well beyond the policy breach allegations in the SAC. A similar argument was asserted and rejected in *Labella Winnetka, Inc. v. General Cas. Ins. Co.*, 259 F.R.D. 143 (N.D. Ill. 2009). In that case, the Defendant insurer was sued for failing to pay "the full amount that it owes" under a fire insurance policy on that plaintiff's restaurant. The plaintiff alleged a variety of wrongful acts by the insurer to obstruct "plaintiff's attempts to move back into the premises and reopen its restaurant" "in order to avoid full payment to plaintiff." The Court rejected the insurer's argument that plaintiff had only alleged a simple breach of contract and held: ". . .although plaintiff does not include a great deal of detail in its complaint, plaintiff alleges precisely that which it ultimately must prove under Illinois law" *i.e.*, "a deceptive act or practice."

Defendant's Illinois Insurance Law 155 preemption argument fares no better than its contract breach argument above. Its authorities are inapposite because in those cases only ordinary allegations of breach of insurance policy claims were asserted, not allegations of deceptive practices visited on those plaintiffs after the insureds entered into the policies. allege unfair or deceptive practices. *See e.g. Cramer v. Insurance Exchange Agency*, 675 N.E. 2d 897, 900 (Ill. 1996); *Cook, ex rel. id. Cook v. AAA Life Ins. Co.*, 13 N.E. 3d 20, 33 (Ill. App. Ct. 2014); *Leona's Pizzeria Inc. v. NW Nat. Cas. Co.*, 203 F. Supp. 2d 930, 933 (N.D. Ill. 2002).

## POINT III

### THE COMPLAINT STATES A VIABLE FOR DECLARATORY RELIEF AND CANNOT BE DISMISSED PURSUANT TO RULE 12b-1

State Farm argues that the declaratory relief claim should be dismissed if the contract claim is dismissed because the breach of contract claim is the predicate for the Declaratory Judgment claim.

State Farm Br. 17. Defendant also argues that since the Declaratory Judgment claim is duplicative of the contract claim it is the Declaratory Judgment claim which should be dismissed. State Farm cites *Butta v. GEICO Cas. Co.*, 400 F. Supp. 3d 225, 233, 236 (E.D. Pa. 2019) and *United States v. Vantage Tr. Fed. Credit Union*, No. 3:17-cv-0348, 2018 WL 306920 at *7 (M.D. Pa. Jan. 5, 2018). Defendants' cases are distinguishable and fail to support dismissal here. Neither of the actions in Butta or Vanguard is a class action. Here it is premature to dismiss the declaratory judgment claim in this class action because of some overlap between the declaratory judgment claim and other claims. see generally, Gooch v Life Investors Insurance Company of America, 2012 App LEXIS2643 ( 6th Cir Feb 10, 2012) (discussing appropriateness of certifying a Rule 23 (b)(2) class for declaratory judgment in the context of a class representative claims for damages only.) Furthermore, Fed R. Civ. P. 57 itself allows the claim here: "The existence of an adequate remedy does not preclude a declaring judgement that is otherwise appropriate."

## POINT IV

## PLAINTIFFS STATE A VIABLE CLAIM FOR BREACH OF CONTRACT

### A.  State Farm Breach The Policy By Denying Plaintiffs Coverage As A Partial Loss

Count III of The SAC alleges a breach of the insurance policy terms of coverage. The Plaintiffs dwelling at 156 Foote Avenue, Duryea, Pennsylvania was insured to a limit of $243,200 for the "dwelling." *See* Policy attached to Declaration of Alan Peppel as Exhibit 1 (ECF 27-2, pg. 35 of 44). The specific provision which Plaintiffs claim was breached are quoted at ¶¶ 24, 26, 30, 44, 62, 67, 75, 104, 105, 110, 115, 116.:

The policy terms provide coverage for "cost of repair or replace... the damaged part of the property." Thus the coverage promise is to pay the "damaged part of the property" where the "damaged part of the property" is only a part of the insured premises. In such case, the coverage is to pay the cost to repair and replace the damaged property and plaintiffs contend the policy requires  such coverage to be afforded on a "repair and remodel" basis. SAC at 26. Plaintiffs contend the policy coverage

provisions cover Plaintiffs for the "damaged part of the property" for "costs to repair or replace," (SAC at 26).

Thus at the core of this dispute is the "nature" and "scope" (SAC ¶ 24,25)) of the coverage provided under State Farm's policy for losses that are less than total destruction of the property.

State Farm does not however honor the coverage promise it makes for partial losses, instead State Farm covered Plaintiffs' partial loss as a total loss and calculated the payment to Plaintiffs as a total loss and used "new construction" pricing. SAC 30.

Plaintiffs here allege that the policy language above, by its terms, provides coverage for the "costs to repair or replace" the "damaged property." State Farm breached these coverage provisions by refusing coverage for repair costs of the "damaged property" and insisting on using a coverage model for total losses and pay only the costs new construction costs. This deprived Plaintiff of the benefit of the coverage they purchased according to policy provisions. That was a breach and said breach forced the insured, foreseeably into a costly and lengthy appraisal proceeding after which insureds were awarded a recovery which they were forced to accept once confirmed by the appraisal.

**B. State Farm's Argument In Opposition Argues For A Policy Coverage Interpretation Which Is Contrary To Rules Of Contract Interpretation**

State Farm's breach of contract argument dodges all of the Complaint's well -pleaded allegations and then creates and destroys the straw man arguments it has itself raised. Defendants argue that Plaintiffs breach of contract claim must be dismissed because "plaintiffs fail to allege any policy provision was breached." State Farm argues that its obligation is to pay "the cost to repair or replace" the damaged property only according to a two-step loss settlement provision." Br. at 5. State Farm contends that under the two step contractual process, "payment is first made for 'the actual cash value of the damages part of the property' followed by payment for any additional amounts 'actually and necessarily' spent on covered repairs of the damaged property." Br. at 6, citing Policy at 11. Ignoring the allegations of the Complaint describing the breach, State Farm argues "plaintiffs do not

allege that they received less than the actual cash value of the covered damage to their home or that State Farm failed to pay any amounts they actually and necessarily spent on repairs." Br. at 6. Their argument fails to support State Farm's bottom line that Plaintiffs have failed to identify any "specific policy provision breached by State Farm." *Id.*

State Farm thus distorts Plaintiffs' coverage claim into a dispute about its obligations to use any "specific repair estimating software." Br. at 5-6. State Farms' argument that this case is not about a contract breach but only about a method of estimating a loss should be rejected here just as it was in *Mitchell v. State Farm Fire and Casualty Company*, 327 F.R.D. 552 (N.D. Miss. 2018). In *Mitchell*, like this case, involved the Xactimate system settings selected by State Farm. But the Court brushed aside State Farm's mischaracterization and held:

> The issue here is not whether actual cash value payments paid by State Farm were reasonable or sufficient, but rather whether State Farm was entitled to deduct labor depreciation from its insureds in the first place.

While *Mitchell* was deciding a Rule 23 motion, the Court was required to analyze the nature of the contract breach claims. The Court ultimately granted Rule 23(b)(3) certification. *Id.* at 565. ECF 9-2, page 16 of 44.

In the present case, as framed by the Complaint, the parties dispute the precise meaning of coverage terms. Interpretation of an insurance policy is a matter of law to be decided by the court. *Curbee, Ltd. v. Rhubart*, 406 Pa. Super. 505, 509, 594 A.2d 733, 735 (1992). Under Pennsylvania jurisprudence, the court must "ascertain the intent of the intent of the parties by reading the policy as a whole, and ... give unambiguous terms their plain meaning." *Nationwide*, 579 F.3d at 307-08 (citing *Jacobs Constructors, Inc. v. NPS Energy Servs., Inc.*, 264 F.3d 365, 375-76 (3d Cir. 2001); *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 363 (3d Cir. 2004)).

The Pennsylvania Supreme Court has held that, "[w]here terms are used in a contract which are known and understood by a particular class of persons in a certain special or peculiar sense, evidence to that effect is admissible for the purpose of applying the instrument to its proper subject

matter." *Resolution Trust Com. v. Urban Redev. Auth. of Pittsburgh*, 638 A.2d 972, 975 (Pa. 1994).

The definition of "new construction," both as used by Xactimate and in the insurance and construction industries at large, is a building that needs to be rebuilt in its entirety, from the foundation up, resulting from an actual or constructive total loss to the insured's property. The definition of "repair and remodel" in the context of an insurance loss, as used by Xactimate and in the insurance and construction industries at large, is a building of which some parts remain serviceable, subject to the rebuilding of the remainder of the property.

The insurance industry standard for the use of the Xactimate program is that partial losses jobs are priced using the program's "repair and remodel" pricing, and total losses are priced using the program's "new construction" database. The repair and remodel pricing would be consistent with the policy provision to pay the "damaged part of the property." Consistent with the general practice in the insurance industry and in the construction industry, for virtually every construction line item priced by Xactimate, the cost of that item for a repair and remodel is higher than the pricing of the same item for new construction.

But even crediting State Farm's explanation that the policy does not require a specific method of ascertaining a total or partial loss or the valuation thereof, at best only creates an ambiguity. In that event, State Farm likewise loses on its motion to dismiss. Where a court finds an insurance policy provision ambiguous, "the provision is to be construed in favor of the insured and against the insurer." *Redevelopment Auth. of Cambria Cty. v. International Ins. Co.*, 454 Pa. Super. 374, 388, 685 A.2d 581, 588 (1996). *See also Bubis v. Prudential Prop. & Cas. Ins. Co.*, 718 A.2d 270, 1273 (Pa. Super. Ct. 1998) ("[A]n ambiguity in an insurance contract should be read in favor of the insured.").[1] This can be attributed to the general principle that a contract must be construed against the drafter, as well as

---

[1] A specific provision in an insurance policy is deemed ambiguous "if reasonably intelligent people could differ as to its meaning." *Williams v. Nationwide Mut. Ins. Co.*, 750 A.2d 881, 885 (Pa. Super. Ct. 2000).

the fact that insurance contracts generally are contracts of adhesion. *Rudolph v. Pennsylvania Blue Shield*, 553 Pa. 9, 17, 717 A.2d 508, 511 (1998) (citation omitted). In addition, this approach conforms to Pennsylvania's policy of interpreting insurance coverage clauses "broadly so as to afford the greatest possible protection to the insured." *Eichelberger v. Warner*, 290 Pa. Super. 269, 275, 434 A.2d 747, 750 (1981) (citing *Mohn v. American Cas. Co. of Reading*, 458 Pa. 576, 326 A.2d 346 (1974), and *Penn-Air, Inc. v. Indemnity Ins. Co. of N. Amer.*, 439 Pa. 511, 269 A.2d 19 (1970)). See also *Butterfield v. Giuntoli*, 448 Pa. Super. 1, 14 n.8, 670 A.2d 646, 652 n.8 (1995) ("[I]f a policy is reasonably susceptible of two interpretations, it must be construed in the insured's favor so as not to defeat, unless clearly necessary, the claim to indemnity which the insured intended to obtain.").

C.   **The Holdback Claim Pleads An Actionable Breach**

Defendants challenges the of the pleading of the holdback claim Br at f-10 because Plaintiffs do not allege they made the covered repairs within two years of the less and/or that State Farm was notified within 30 day of completing the work. Id at 9. However, these facts, all conditions precedent were set forth generally at paragraph 71-75, 106-109 as allowed under Fed R. Civ. P. 9(c):

> In pleading conditions precedent it suffices to allege generally that all conditions precent have occurred or been performed.

D.   **The Breach of Contract Does Not Constitute**
     **An Impermissible Challenge To The Appraisal Award**

State Farm's final stab at killing the breach of contract claim is to argue that the claim's alleged defendants cannot be cured because the "amount of their [plaintiffs'] loss has been established by appraisal . . . and bars any subsequent challenge to the sufficiency of State Farm's payments." Br. at 6.

In Pennsylvania, "An appraisal is limited to determining the amount of loss with all other issues reserved for settlement by either negotiation or litigation."*McGourty v. Pennsylvania Millers Mutual Ins. Co.*, 704 A.2d 663, 664 (Sup. Ct. Pa. 1997) "a coverage dispute is not within the scope of an

appraisal claim." *Prof'l Inc. v. Mut. Benefit Ins. co.*, 2020 WL 6743978 at *6 (Pa. Super. Ct. Nov. 17, 2020). Thus the coverage claim framed here in is actionable and not barred.

By denying that Plaintiffs claims here constitute "coverage" claims, State Farm is contradicting the position it took in *Fox v. State Farm Fire and Casualty Company*, U.S.D.C. DNJ 20-cv-18131 where State Farm stated there was a "coverage" dispute when the insured claimed coverage for repairs which State Farm says were not damaged. *See* Opinion in Fox ECF No. 40 page 17 of 26 "State Farm's denial of Plaintiff's demand for appraisal did not result from a disagreement over the cost of a covered item, but rather whether the occurrence caused damage to other areas of the Property . . ." Here the dispute is also over the extent of covered damage: State Farm by applying a "new construction" cost is asserting that the <u>entire</u> premises was damaged. Plaintiffs on the other hand assert that the "damaged property" is only partial. The policy coverage promises to pay for "damaged property", since the "damaged property" was only part of the property. State Farm must pay to cost to repair the damaged property.

## POINT V

### STATE FARM'S ARGUMENT THAT PLAINTIFFS HAVE SUFFERED NO DAMAGES BECAUSE THEY DO NOT CHALLENGE THE APPRAISAL AWARD IGNORES THE SUBSTANTIAL ADDITIONAL COSTS INCURRED BY PLAINTIFFS DUE TO DEFENDANTS' BREACH OF POLICY COVERAGE TERMS

The fact that plaintiffs were paid for their claim after an appraisal process does not preclude this action for damages. Here it is alleged that State Farm's breach of coverage terms (where State Farm persisted using a total loss model to rely on its "new construction" figures) which forces the insured into an appraisal process, which is expensive and time consuming for insureds. As a result of the breach, Plaintiffs and members of the Class have been damaged in an amount representing the difference between "repair/replacement" pricing and "new construction" pricing plus the costs of collection including the expense of Appraisal, legal fees and consequential damages. Such damages are recoverable. Under Pennsylvania law as they were incurred solely as a result of the breach and are thus

direct damages and/or are compensable consequential damages under Pennsylvania law because State Farm knew, and created, the circumstances responsible for loss and the injury was foreseeable, such as damages are recoverable.

Pennsylvania law recognizes two types of contract damages: (1) general damages, which are those that flow directly from the breach (also referred to as ordinary or compensatory damages); and (2) special (or consequential) contract damages, which occur as a result collateral losses such as expenses incurred or gains prevented because of the breach. *Baynes v. George E. Mason Funeral Home, Inc.,* Civ. No. 3-153, 2011 WL 2181469 (W.D. Pa. June 2, 2011) (citing *LBL Skysystems (USA), Inc. v. APG-America, Inc.,* 319 F. Supp. 2d 515, 523 (E.D. Pa. 2004) (citations omitted));

Normally, a breaching party is liable only for the general damages that would naturally result from the breach. *See* RESTATEMENT (SECOND) OF CONTRACTS § 351(2 a) ("Loss may be foreseeable as a probable result of a breach because it follows from the breach in the ordinary course of events."); *McDermott,* 11 F. Supp. 2d at 624. However, the breaching party may also liable for consequential damages if "it is shown specifically that the defendant had reason to know of the circumstances responsible for the special damage and [the ability] to foresee the injury." *Hadley v. Baxendale,* 9 Ex. 341, 156 Eng. Rep. 145 (1854); *McDermott,* 11 F. Supp. 2d at 624 (foreseeability of consequential or "special" damages is determined based on the parties' understanding at the time of contract). Thus, to recover consequential damages, a plaintiff must show that at the time the contract was entered, "the damages subsequently claimed were in the reasonable contemplation of the parties." *Keystone Diesel Engine Co. v. Irwin,* 191 A.2d 376, 378 (Pa. 1963). Here it is easy to understand that delay due to State Farm's refusal to honor the policy terms caused extensive expenses to Plaintiffs.

## VI. CONCLUSION

The Court should deny Defendant's Motion to Dismiss the Second Amended Complaint.

Respectfully submitted,

**SQUITIERI & FEARON, LLP**

By:___*/s/Lee Squitieri*_____
            Lee Squitieri, Esquire

Dated:  November 29, 2022