# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMIE BELOTTI and BECKY BELOTTI | : : : | CIVIL ACTION NO. 3:22-cv-01284-MEM |
| Plaintiffs, | : : | (Hon. Judge Malachy E. Mannion) |
| vs. | : : | |
| STATE FARM FIRE AND CASUALTY COMPANY, | : : : | |
| Defendant. | : | |

## STATE FARM FIRE AND CASUALTY COMPANY'S BRIEF
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................1

ARGUMENT ........................................................................................2

I.   STATE FARM IS ENTITLED TO SUMMARY JUDGMENT ON
     PLAINTIFFS' CLAIM FOR BREACH OF CONTRACT (COUNT III). .....2

     A.   State Farm Has No Contractual Duty to Use Any Particular
          Xactimate Labor Efficiency Settings When Estimating Losses. ..........3

     B.   State Farm Did Not Breach Its Loss Settlement Obligations. ..............4

          1.   State Farm Fully Paid ACV. ......................................................5

          2.   Plaintiffs Are Not Entitled to Additional RC Payments. ............7

II.  PLAINTIFFS CANNOT ESTABLISH BAD FAITH (COUNT I). ...............9

     A.   There Is No Bad Faith Without a Breach. ...............................................9

     B.   Plaintiffs' Conclusory Bad Faith Allegations Are Without Basis. .......9

     C.   Plaintiffs' Bad Faith Claim Must Be Viewed in Light of State
          Farm's Entire Course of Conduct. ......................................................12

III. PLAINTIFFS HAVE NO VALID ICFA CLAIM (COUNT II). .................14

     A.   ICFA Does Not Apply to Plaintiffs. ....................................................14

     B.   ICFA is Preempted Here. ....................................................................15

     C.   The Undisputed Facts Do Not Support An ICFA Claim. .................15

IV.  PLAINTIFFS CANNOT PROVE BREACH OF THE IMPLIED
     COVENANT OF GOOD FAITH AND FAIR DEALING (COUNT IV). ...17

V.   PLAINTIFFS CANNOT PROVE ANY RIGHT TO DECLARATORY
     RELIEF (COUNT V). ...............................................................................17

VI.  PLAINTIFFS CANNOT PROVE A UPTCPL VIOLATION (COUNT
     VI). ..........................................................................................................18

A.     The UTPCPL Does Not Apply.................................................................18

B.     Plaintiffs Cannot Prove the Elements of a UTPCPL Claim. ..............19

VII.   PLAINTIFFS HAVE NO STANDING TO OBTAIN DECLARATORY OR INJUNCTIVE RELIEF BECAUSE THEY ARE NOT STATE FARM INSUREDS.................................................................................................19

CONCLUSION ......................................................................................................20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Angino v. Wells Fargo Bank, N.A.*,
No. 1:15-CV-418, 2016 WL 787652 (M.D. Pa. Feb. 19, 2016)........................18

*Ash v. Cont'l Ins. Co.*,
932 A.2d 877 (Pa. 2007) .....................................................................................9

*Avery v. State Farm Mut. Auto. Ins. Co.*,
835 N.E.2d 801 (Ill. 2005) ...........................................................................13, 14

*Barbato v. Progressive Specialty Ins. Co.*,
No. CV 3:21-732, 2023 WL 2287646 (M.D. Pa. Feb. 28, 2023)..................9, 10

*Barry v. Ohio Cas. Grp.*,
No. CIV.A.3:04 188, 2007 WL 128878 (W.D. Pa. Jan. 12, 2007) ...................12

*Bass v. Butler*,
116 F. App'x 376 (3d Cir. 2004) .........................................................................2

*Bd. of Sch. Comm'rs v. Jacobs*,
420 U.S. 128 (1975).............................................................................................2

*Bolus v. Nationwide Prop. & Cas. Co.*,
No. 3:16-CV-00753, 2018 WL 1474669 (M.D. Pa. Mar. 26, 2018).................19

*Borden v. NGM Ins. Co.*,
No. 20-1878, 2023 WL 2403768 (E.D. Pa. Mar. 8, 2023) ...........................11, 12

*Butta v. GEICO Cas. Co.*,
400 F. Supp. 3d 225 (E.D. Pa. 2019).................................................................17

*Clark v. Prudential Ins. Co. of Am.*,
736 F. Supp. 2d 902 (D.N.J. 2010).....................................................................20

*Connolly v. Reliastar Life Ins. Co.*,
No. CIV.A.03-5444, 2006 WL 3355184 (E.D. Pa. Nov. 13, 2006)...................12

*Cook ex rel. Cook v. AAA Life Ins. Co.*,
13 N.E.3d 20 (Ill. App. Ct. 2014) ......................................................................15

*CoreStates Bank, N.A. v. Cutillo*,
   723 A.2d 1053 (Pa. Super. Ct. 1999).......................................................................2

*Cramer v. Ins. Exch. Agency*,
   675 N.E.2d 897 (Ill. 1996)....................................................................................14

*Crichton v. Golden Rule Ins. Co.*,
   576 F.3d 392 (7th Cir. 2009) .........................................................................13, 14

*Dagit v. Allstate Prop. and Cas. Co.*,
   No. 16-3843, 2017 WL 395489 (E.D. Pa. Jan. 30, 2017) ....................................6

*Gardner v. State Farm Fire & Cas. Co.*,
   544 F.3d 553 (3d Cir. 2008) ................................................................................18

*Gridley v. State Farm Mut. Auto. Ins. Co.*,
   840 N.E.2d 269 (Ill. 2005)...................................................................................14

*Hometown Cmty. Ass'n, Inc. v. Philadelphia Indem. Ins. Co.*,
   No. 17-CV-00777-RBJ, 2017 WL 6335656 (D. Colo. Dec. 12,
   2017) ......................................................................................................................7

*Hunt v. U.S. Tobacco Co*.,
   538 F.3d 217 (3d Cir. 2008), *as amended* (Nov. 6, 2008)..................................18

*Ice City, Inc. v. Ins. Co. of N. Am.*,
   314 A.2d 236 (Pa. 1974).......................................................................................11

*Jonathan Z. v. Oxford Health Plans*,
   No. 2:18-cv-00383-JNP-JCB, 2022 WL 3227909 (D. Utah Aug. 9,
   2022) ....................................................................................................................20

*Ke v. Liberty Mut. Ins. Co.*,
   No. CV 20-1591, 2020 WL 7353892 (E.D. Pa. Dec. 14, 2020).........................18

*Kerr v. State Farm Mut. Auto. Ins. Co.*,
   No. 18-309, 2018 WL 5809989 (W.D. Pa. Nov. 6, 2018) ..................................17

*Kosierowski v. Allstate Ins. Co*.,
   51 F. Supp. 2d 583 (E.D. Pa. 1999)....................................................................12

*Leona's Pizzeria, Inc. v. Nw. Nat. Cas. Co.*,
   203 F. Supp. 2d 930 (N.D. Ill. 2002)..................................................................15

*Meyers v. Protective Ins. Co.*,
No. 3:16-CV-01821, 2017 WL 4516712 (M.D. Pa. Oct. 10, 2017)...................12

*Mirarchi v. Seneca Specialty Ins. Co.*,
564 F. App'x 652 (3d Cir. 2014)...................................................................7, 11

*Monck v. Progressive Corp.*,
No. 3:15-CV-250, 2015 WL 1638574 (M.D. Pa. Apr. 13, 2015) ...............16, 17

*Mondron v. State Farm Mut. Auto. Ins. Co.*,
No. CV 16-412, 2016 WL 7384183 (W.D. Pa. Dec. 21, 2016) ........................18

*NBL Flooring, Inc. v. Trumbull Ins. Co.*,
No. CIV.A. No. 10-4398, 2014 WL 615967 (E.D. Pa. Feb. 12,
2014) .............................................................................................................20

*New Park Manor, Inc. v. N. Pointe Ins. Co.*,
No. 13 C 4537, 2013 WL 5408856 (N.D. Ill. Sept. 26, 2013) ..........................15

*Nguyen v. St. Paul Travelers Ins. Co.*,
No. 06-4130, 2008 WL 4691685 (E.D. La. Oct. 22, 2008).................................5

*Nye v. State Farm Mut. Auto. Ins. Co.*,
No. 3:21-CV-01029, 2022 WL 969620 (M.D. Pa. Mar. 30, 2022).....................9

*Papurello v. State Farm Fire & Cas. Co.*,
144 F. Supp. 3d 746 (W.D. Pa. 2015).................................................................5

*Paterson-Leitch Co. v. Ins. Co. of N. Am.*,
366 F. Supp.749 (N.D. Ohio 1973) ....................................................................5

*Philidor Rx Svcs. LLC v. Polsinelli P.C.*,
552 F. Supp. 3d 506 (E.D. Pa. 2021)..................................................................3

*Rancosky v. Washington Nat'l Ins. Co.*,
170 A.3d 364 (Pa. 2017).....................................................................................9

*Reid v. BCBSM, Inc.*,
984 F. Supp. 2d 949 (D. Minn. 2013).................................................................20

*Ridolfi v. State Farm Mut. Auto. Ins. Co.*,
No. 1:15-CV-859, 2017 WL 4418423 (M.D. Pa. Oct. 5, 2017)........................16

*Riley v. Farmers Fire Ins. Co.*,
  735 A.2d 124 (Pa. Super. Ct. 1999) ...................................................................10

*Shaw v. USAA Cas. Ins. Co.*,
  No. CV 3:17-947, 2018 WL 2183272 (M.D. Pa. May 11, 2018) ......................10

*Sherwin-Williams Co. v. Cty. of Delaware, Pa.*,
  968 F.3d 264 (3d Cir. 2020) ..............................................................................19

*Sieving v. Cont'l Cas. Co.*,
  535 F. Supp. 3d 762 (N.D. Ill. 2021) .................................................................14

*Simmons v. Nationwide Mut. Fire Ins. Co.*,
  788 F. Supp. 2d 404 (W.D. Pa. 2011) ................................................................16

*Smith v. State Farm Mut. Auto. Ins. Co.*,
  506 F. App'x 133 (3d Cir. 2012) ........................................................................10

*Smith v. State Farm Mut. Auto. Ins. Co.*,
  No. CIV.A. 11-7589, 2012 WL 508445 (E.D. Pa. Feb. 16, 2012),
  *aff'd,* 506 F. App'x 133 (3d Cir. 2012) .............................................................16

*Sullivan v. Liberty Mut. Ins. Co.*,
  No. 21 C 6084, 2022 WL 2105904 (N.D. Ill. June 10, 2022) ...........................20

*U.S. v. Vantage Tr. Fed. Credit Union*,
  No. 3:17-CV-0348, 2018 WL 306920 (M.D. Pa. Jan. 5, 2018) ........................17

*Vista Pointe Townhome Assoc. Inc. v. Auto-Owners Ins. Co.*,
  No. 16-CV-0973-MSK-NYW, 2017 WL 4772859 (D. Colo. Oct.
  23, 2017) ...............................................................................................................6

*Ware v. Rodale Press, Inc.*,
  322 F.3d 218 (3d Cir. 2003) ................................................................................2

*Warnstorff v. State Farm Auto. Ins. Co.*,
  No. 3:14-0077, 2014 WL 2808604 (M.D. Pa. June 19, 2014) ..........................10

**Rules and Statutes**

215 ILCS 5/155 .............................................................................................14, 15

42 Pa. C.S. § 8371 .................................................................................................9

vi

73 Pa. C.S. § 201-2(4)(xxi) ........................................................................................18

Fed. R. Civ. P. 9(b) ....................................................................................................15

Defendant State Farm Fire and Casualty Company ("State Farm") respectfully submits this Brief in support of its Motion for Summary Judgment on all of Plaintiffs' claims.[1]

## **INTRODUCTION**

This alleged class action challenges State Farm's use of Xactimate software's "new construction" labor efficiency setting to estimate the repair costs for fire damage to Plaintiffs' home (the "Property"). Plaintiffs admit, however, that their insurance policy (the "Policy") "does not prescribe a specific method of computation nor require a specific method of estimation," and that the "new construction" setting is commonly used in "***large partial losses,***" like their "catastrophic" fire loss. Second Amended Complaint ("SAC") [Dkt. 25] ¶¶ 25, 42, 61; SOF ¶¶ 57, 58, 60. Because there is no evidence that State Farm breached any term of the Policy by using the "new construction" setting, State Farm is entitled to summary judgment on Plaintiffs' breach of contract claim.

Plaintiffs' add-on extra-contractual claims, which are predicated on a breach of the Policy, necessarily fail as well. State Farm independently is entitled to judgment as a matter of law on these superfluous claims because: there is no

---

[1] Pursuant to Local Rule 56.1, the Motion and this Brief are accompanied by a Statement of Undisputed Material Facts ("SOF") and supporting Declarations of Mark Shumate, Nick Kahlon, and Alan Peppel, which are all incorporated by reference as if fully set forth herein. State Farm separately moves to file certain exhibits to those Declarations under seal.

evidence of bad faith; the Illinois Consumer Fraud Act ("ICFA") does not apply to extraterritorial conduct like that at issue here; the claims for breach of the implied covenant of good faith and fair dealing and declaratory judgment are precluded as duplicative; the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") has no application here; and Plaintiffs lack standing to seek declaratory and injunctive relief because they are no longer State Farm insureds.  Summary judgment should be entered against Plaintiffs and in State Farm's favor on all claims.[2]

## **ARGUMENT**

## I.     **STATE FARM IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' CLAIM FOR BREACH OF CONTRACT (COUNT III).**

To prevail on a claim for breach of contract under Pennsylvania law, a plaintiff must prove "a breach of a duty imposed by the contract" and "resultant damages." *Ware v. Rodale Press, Inc.,* 322 F.3d 218, 225 (3d Cir. 2003) (quoting *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)).  Plaintiffs cannot satisfy either element.

---

[2] State Farm moves for summary judgment on all the named Plaintiffs' claims. If their individual claims fail, their class claims necessarily fail as well.  *See Bass v. Butler*, 116 F. App'x 376, 385 (3d Cir. 2004) (citing *Bd. of Sch. Comm'rs v. Jacobs*, 420 U.S. 128, 129–30 (1975)).

## A.   State Farm Has No Contractual Duty to Use Any Particular Xactimate Labor Efficiency Settings When Estimating Losses.

Plaintiffs contend State Farm "breached the contract" by using Xactimate's "new construction" setting when estimating the value of their loss, rather than the software's "repair/reconstruction" setting. SAC ¶ 115. But no provision in the Policy requires State Farm to use a specific repair estimating system, let alone one particular setting in that software over another. *See Philidor Rx Svcs. LLC v. Polsinelli P.C.*, 552 F. Supp. 3d 506, 513-14 (E.D. Pa. 2021) ("To properly allege a breach of contract, a party needs to point at a specific provision of the document the counterparty breached.") (collecting cases).

Plaintiffs admit: "The policy does not prescribe a specific method of computation nor require a specific method of estimation." SAC ¶ 25. Plaintiffs cannot prove State Farm breached the Policy by failing to use a different "method of estimation" (Xactimate's "restoration/service/remodel" setting) when they admit the Policy imposes no such requirement.

Even if State Farm was somehow obliged to use a particular Xactimate software setting when preparing an initial estimate, Plaintiffs admit the "new construction" setting appropriately is used both for "'ground-up' reconstruction or *large partial losses* …" SAC ¶ 42.[3] This is confirmed by the software's developer,

---

[3] Unless otherwise stated, all emphasis is added.

which explicitly states: "portions of a ***large partial loss*** can be addressed by selecting the 'New Construction' labor efficiency …"  SOF ¶¶ 58, 59.  It is also confirmed by the sworn testimony of Plaintiffs and their public adjuster, who agree with the foregoing statement.  SOF ¶ 60.  No one disputes that Plaintiffs' "catastrophic" fire loss was a large partial loss.  SAC ¶ 61, SOF ¶¶ 5, 61.[4]

Finally, even if there were a contractual duty to use a different Xactimate software setting (and there is not), Plaintiffs still would not be able to prove any damages from State Farm's use of the "new construction" setting in their estimate as a matter of law.  The undisputed facts demonstrate that Plaintiffs were ultimately paid on the basis of an appraisal award, not State Farm's estimate, and the award was based on an estimate that did not even use Xactimate or its settings.  SOF ¶¶ 43-45, 48.

### B.   State Farm Did Not Breach Its Loss Settlement Obligations.

By the Policy, State Farm agreed to "pay the cost to repair or replace" the Plaintiffs' damaged property "subject to" a two-step loss settlement provision: (1) "until actual repair or replacement is completed, [State Farm] will pay only the actual cash value" of the damaged property ("ACV" payments) ; and (2) "when the repair or replacement is actually completed, [State Farm] will pay the covered additional

---

[4] Plaintiffs and their public adjuster characterized it as a constructive total loss requiring "total replacement."  *See* SOF ¶ 62.

amount you [Plaintiffs] actually and necessarily spend" on repairs, provided the work is completed "within two years" of the loss and State Farm is notified "within 30 days" after the work's completion ("RC" payments).  SOF ¶ 65.  *See, e.g., Papurello v. State Farm Fire & Cas. Co.*, 144 F. Supp. 3d 746, 764-68 (W.D. Pa. 2015) (explaining two-step provision).  The undisputed evidence shows State Farm did not breach either step of this loss settlement provision.

### 1.   State Farm Fully Paid ACV.

Plaintiffs focus on State Farm's ACV estimate, but lose sight of the fact that an insurer's estimate is just that: an estimate.  *See* SOF ¶¶ 53-54.  It can be, and with large claims often is, adjusted over time as the insurer receives new information relating to the work needed or the cost of appropriate repairs.[5]  *Id.*; *Paterson-Leitch Co. v. Ins. Co. of N. Am.,* 366 F. Supp.749, 757 (N.D. Ohio 1973) (insurer's initial estimates of ACV not "conclusive" of ACV owed by insurer).  What matters is the sufficiency of State Farm's *total* ACV payments, not its initial estimate much less a discrete component of that initial payment.  SOF ¶ 56**;** *Nguyen v. St. Paul Travelers Ins. Co.,* No. 06-4130, 2008 WL 4691685, at *7 (E.D. La. Oct. 22, 2008).

Regardless, Plaintiffs here cannot challenge the sufficiency of State Farm's aggregate ACV payments because the appraisal award set the amount of the loss,

---

[5] That occurred here, with State Farm adjusting its estimate and making a supplemental payment based on additional information from Plaintiffs.  See SOF ¶ 55.

and State Farm paid the ACV portion of the award.  This bars Plaintiffs from challenging the sufficiency of State Farm's payments.  *See Dagit v. Allstate Prop. and Cas. Co.,* No. 16-3843, 2017 WL 395489, at *3-*4 (E.D. Pa. Jan. 30, 2017) (dismissing breach of contract claim as barred by appraisal).  Consequently, it is no surprise that Plaintiffs admit they are bound by the appraisal, and they rightly cannot identify any additional ACV amount State Farm owes.  SOF ¶¶ 41, 48.

The parties went to appraisal because they disagreed on the amount of loss.  SAC ¶¶ 65, 66, SOF ¶ 36.  To resolve this disagreement, the parties agreed to appraisal as provided under the Policy (SAC ¶ 67), which states: "If you and we disagree on the amount of loss, either one can demand that the amount of the loss be set by appraisal."  SOF ¶ 27.  State Farm certainly had no obligation to pay the amount estimated by Plaintiffs.  *Id.*; *cf. Vista Pointe Townhome Assoc. Inc. v. Auto-Owners Ins. Co.,* No. 16-CV-0973-MSK-NYW, 2017 WL 4772859, at *2 (D. Colo. Oct. 23, 2017) (where appraisal is invoked, the ACV claim remains "unliquidated" and the insurer's "duty to pay" has not "mature[d] (much less is breached).").  In fact, the appraisal award was significantly less than Plaintiffs' estimate.  *See* SAC ¶¶ 66, 70, SOF ¶¶ 22, 40.

The fact that the parties' appraisers ultimately assigned a higher value to the claim than State Farm's estimate (but far lower than Plaintiffs' estimate) does not mean State Farm breached the Policy, or acted in bad faith, "either in arriving at its

initial estimate or by standing by that estimate until the appraisal process concluded. That is, after all, what the appraisal process is for—settling disputes about the value of a claim." *Mirarchi v. Seneca Specialty Ins. Co.*, 564 F. App'x 652, 656 (3d Cir. 2014) (citation omitted). *See also Hometown Cmty. Ass'n, Inc. v. Philadelphia Indem. Ins. Co.*, No. 17-CV-00777-RBJ, 2017 WL 6335656, at *4 (D. Colo. Dec. 12, 2017), *on reconsideration in part,* No. 17-CV-00777-RBJ, 2018 WL 2008853 (D. Colo. Apr. 30, 2018) (dismissing breach of contract claim: "[T]hough [plaintiff] may have disagreed with [the insurer's] … initial actual cash value amount, such a disagreement is contemplated in the insurance policy, and the appraisal process exists to address just such disagreements").

2. *Plaintiffs Are Not Entitled to Additional RC Payments.*

Plaintiffs cannot prove any entitlement to any additional RC payments under the second step of State Farm's loss settlement provision either. After receiving the additional ACV amount established by the appraisal award, Plaintiffs would only be entitled to receive the "additional amount" they "actually and necessarily" spent on repairs completed "within two years" of the loss, and then only if State Farm received notice of the repairs "within 30 days" of the work's completion. SOF ¶ 65.

Yet there was no such amount, for it is undisputed that Plaintiffs never attempted to repair the insured Property.  SOF ¶ 66.[6]

Nevertheless, State Farm voluntarily allowed Plaintiffs' purchase of a new home to act as a substitute for undertaking repairs, whereby the purchase price of the new home ($239,900) essentially functioned as a stand-in for repair costs of the Property.  SOF ¶¶ 67, 68.  Pursuant to this voluntary undertaking, State Farm made a $40,162.78 RC payment to Plaintiffs towards the purchase price of their new home, in addition to $200,978.72 in ACV payments by State Farm pre- and post-appraisal. *Id.* ¶ 69**.**

Plaintiffs certainly are not entitled to any additional RC payment, however, because the total amount they have already received from State Farm for the damage to their home ($241,141.50) exceeds the amount Plaintiffs paid for their new home ($239,900), which Plaintiffs testified included the cost of all repairs to that property. SOF ¶¶ 72-74.[7]  Plaintiffs have not identified any additional repairs to the new property that were not already included in the purchase price.  Regardless, the two-year deadline for completing repairs under the loss settlement provision had long

---

[6] Plaintiffs were unhappy with the Property prior to the loss, and State Farm's ACV payment helped them purchase a new home.  SOF ¶ 70.

[7] This contradicts Plaintiffs' filings representing that the purchase price did not include their repairs to the new property.  SOF ¶ 74.

since passed.  There is no evidence of any entitlement to additional RC payments within the terms of the Policy.

## II.   PLAINTIFFS CANNOT ESTABLISH BAD FAITH (COUNT I).

### A.   There Is No Bad Faith Without a Breach.

Section 8371 affords a potential recovery for insurer bad faith only "[i]n an action arising under an insurance policy."  42 Pa. C.S. § 8371.  Accordingly, since Plaintiffs cannot prove State Farm breached the Policy, they cannot sue in bad faith. *See Nye v. State Farm Mut. Auto. Ins. Co.*, No. 3:21-CV-01029, 2022 WL 969620, at *4 (M.D. Pa. Mar. 30, 2022) ("[D]ismissal of the breach of contract claim removes the predicate cause of action otherwise required to accompany the section 8371 claim."); *Ash v. Cont'l Ins. Co.,* 932 A.2d 877, 882 (Pa. 2007) (section 8371 applies only where insured has filed "an action arising under an insurance policy" (quoting statute)).

### B.   Plaintiffs' Conclusory Bad Faith Allegations Are Without Basis.

The undisputed evidence also shows Plaintiffs cannot establish a bad faith claim.  To establish bad faith under Pennsylvania law, "a plaintiff must demonstrate, by clear and convincing evidence, (1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew or recklessly disregarded its lack of a reasonable basis in denying the claim." *Rancosky v. Washington Nat'l Ins. Co.*, 170 A.3d 364, 377 (Pa. 2017).  At summary judgment, Plaintiffs carry a "heavy burden" to show "the evidence is 'so clear, direct, weighty

and convincing as to enable a clear conviction, without hesitation, about whether or not the defendant[ ] acted in bad faith.'" *Barbato v. Progressive Specialty Ins. Co.*, No. CV 3:21-732, 2023 WL 2287646, at *4 (M.D. Pa. Feb. 28, 2023) (citations omitted).  Plaintiffs have not and cannot meet this heavy burden.

Plaintiffs' bad faith claim is principally based on their assertion that it was improper for State Farm to use "new construction" numbers in its estimate.  SAC ¶¶ 79(a)-(c), (e)-(h), (k), (n)-(o), (q)-(r).  However, mere disagreements about a claim's evaluation are "not unusual" and do not constitute bad faith.  *Smith v. State Farm Mut. Auto. Ins. Co.*, 506 F. App'x 133, 137 (3d Cir. 2012); *Barbato*, 2023 WL 2287646, at *5; *Shaw v. USAA Cas. Ins. Co.*, No. CV 3:17-947, 2018 WL 2183272, at *8 (M.D. Pa. May 11, 2018); *Warnstorff v. State Farm Auto. Ins. Co.*, No. 3:14-0077, 2014 WL 2808604, at *3 (M.D. Pa. June 19, 2014).  Plaintiffs admit that whether to use Xactimate's "new construction" setting "is up to the judgement of the estimator."  SOF ¶ 63.[8]

Equally lacking in evidentiary support are Plaintiffs' assertions that State Farm engaged in bad faith in the appraisal process.  SAC ¶¶ 79 (j), (l), (m), (p).

---

[8] State Farm's adjuster certainly had a reasonable basis for determining the "new construction" setting was appropriate, given the extent of damage caused by the fire to Plaintiffs' home, the inclusion of additional labor hours in State Farm's estimate to account for inefficiencies, and the fact that the home would be unoccupied during the repairs, which indisputably weighs in favor of using the labor efficiency setting.  SOF ¶ 64.

Because Plaintiffs did not seek review of the appraisal award within 30 days, they are barred from raising such conclusory allegations now. *See Riley v. Farmers Fire Ins. Co.*, 735 A.2d 124, 130 (Pa. Super. Ct. 1999). Regardless, Plaintiffs admit they have no evidence of any bad faith by State Farm during the appraisal. SOF ¶ 49.

Plaintiffs' assertion that the appraisal was "unnecessary" (SAC ¶¶ 79(d), (i)) is also belied by the undisputed evidence. The parties were approximately $200,000 apart in their estimates, and only a small percentage of that difference (around $20,000) was due to the use of the "new construction" setting in State Farm's estimate. SOF ¶¶ 36, 37. Even if State Farm had changed from the "new construction" setting, Plaintiffs testified there were other disputed amounts that still would have had to be resolved. *Id.* ¶ 38. Moreover, appraisal is the "favored practice" for settling disputes over the amount of loss, *Ice City, Inc. v. Ins. Co. of N. Am.,* 314 A.2d 236, 240 (Pa. 1974), and it is specifically provided for in the Policy. SOF ¶ 27. Thus, appraising disputed ACV amounts is a contractual right, not bad faith. *Mirarchi,* 564 F. App'x at 656; *Ice City,* 314 A.2d at 241.[9]

Plaintiffs also cannot establish that State Farm engaged in bad faith by delaying the adjustment of their claim. SAC ¶ 79(b), (j). "[A] long period of delay between demand and settlement does not, on its own, necessarily constitute bad

---

[9] Plaintiffs do not and cannot contend the amount awarded was improper, because their own chosen appraiser agreed to the award. SAC ¶¶ 40, 41.

faith." *Borden v. NGM Ins. Co.*, No. 20-1878, 2023 WL 2403768, at *5 (E.D. Pa. Mar. 8, 2023) (citation omitted). Moreover, courts have "drawn a distinction between an insurer delaying necessary tasks and an insurer delaying settlement when the value of the claim is clear.  The former, without more, does not constitute bad faith, while the latter often does." *Id.* (footnote omitted).  The record shows State Farm had extensive communications with Plaintiffs and their public adjuster and timely responded to their inquiries and requests.  SOF ¶ 76.  Moreover, Plaintiffs were responsible for much of the delay in the adjustment of their claim.  *Id.* ¶ 77.

Finally, Plaintiffs cannot prove State Farm engaged in bad faith by requesting a release (SAC ¶ 79(p)) because merely requesting a release is not bad faith. *Kosierowski v. Allstate Ins. Co.*, 51 F. Supp. 2d 583, 593 (E.D. Pa. 1999) (in a first-party claim, "it is not inappropriate for an insurance company to attempt to resolve all claims with one settlement").  Regardless, Plaintiffs cannot claim damage by this request because State Farm did not condition payment on signing a release, SOF ¶ 78, and Plaintiffs chose not to sign one.

## C.  Plaintiffs' Bad Faith Claim Must Be Viewed in Light of State Farm's Entire Course of Conduct.

Any assessment of bad faith should consider "the entire course of conduct by the Defendant throughout its handling of [the insured's] claim."  *Barry v. Ohio Cas.*

*Grp.*, No. CIV.A.3:04 188, 2007 WL 128878, at *12 (W.D. Pa. Jan. 12, 2007).[10]

Plaintiffs cannot dispute, *inter alia*, that State Farm: paid them over $400,000 for the damage to their home and personal property and for their additional living expenses ("ALE"); made a voluntary advance payment of $20,000 on Plaintiffs' personal property damage claim; voluntarily extended Plaintiffs' ALE benefits on at least three occasions; voluntarily twice extended the contractual one-year deadline for filing suit; made a $40,162.78 RC payment to Plaintiffs (unlinked to actual repairs to the insured Property) to help them purchase a new home, opting not to enforce the Policy requirement that repairs be completed for RC benefits; appointed a contractor to re-inspect the loss and try to reconcile the parties' disagreements, and, when that was unsuccessful, requested appraisal to facilitate settlement; and promptly paid the additional ACV amount awarded in the appraisal.  SOF ¶¶ 79-83.  The totality of State Farm's conduct demonstrates that it acted fairly and reasonably, and certainly not in bad faith.

---

[10] *See also Meyers v. Protective Ins. Co.*, No. 3:16-CV-01821, 2017 WL 4516712, at *6 (M.D. Pa. Oct. 10, 2017) (same); *Connolly v. Reliastar Life Ins. Co.*, No. CIV.A.03-5444, 2006 WL 3355184, at *8 (E.D. Pa. Nov. 13, 2006) (holding that alleged bad faith conduct "cannot be viewed in isolation").

## III.   PLAINTIFFS HAVE NO VALID ICFA CLAIM (COUNT II).

### A.   ICFA Does Not Apply to Plaintiffs.

ICFA "does not have extraterritorial effect." *Avery v. State Farm Mut. Auto. Ins. Co.,* 835 N.E.2d 801, 852-53 (Ill. 2005).  Non-Illinois resident parties such as Plaintiffs "may sue under ICFA only if the circumstances relating to the alleged fraudulent transaction occurred mostly in Illinois." *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 396 (7th Cir. 2009) (citing *Avery*).  That did not happen here.

Plaintiffs have not and cannot point to any alleged fraud in Illinois.  The mere fact that State Farm is headquartered in Illinois is clearly insufficient to overcome the restriction upon the extraterritorial assertion of an ICFA claim.  *See Sieving v. Cont'l Cas. Co.*, 535 F. Supp. 3d 762, 771 (N.D. Ill. 2021) ("the administration of [a] defendant's business in Illinois" and even "dissemination" of allegedly deceptive documents from Illinois "is insufficient to give a nonresident plaintiff a claim").  Plaintiffs bought their Policy in Pennsylvania for property in Pennsylvania.  SOF ¶ 85.  Their insurance claim was handled in Pennsylvania by State Farm personnel located in Pennsylvania.  *Id.* ¶ 86.  ICFA cannot apply on these undisputed facts.  *See Avery*, 835 N.E.2d at 854-55; *Crichton*, 576 F.3d at 397 (affirming dismissal of ICFA claim by Florida resident); *Gridley v. State Farm Mut. Auto. Ins. Co.,* 840 N.E.2d 269, 275 (Ill. 2005) (as in *Avery,* "the majority of circumstances … occurred

primarily and substantially in Louisiana, so that [plaintiff] does not have a cognizable cause of action under the Illinois Consumer Fraud Act").

**B.     ICFA is Preempted Here.**

Plaintiffs' ICFA claim is also preempted by Illinois Insurance Code, 215 ILCS 5/155, which "provides an extracontractual remedy to policyholders whose insurer's refusal to recognize liability and pay a claim under a policy is vexatious and unreasonable." *Cramer v. Ins. Exch. Agency*, 675 N.E.2d 897, 900 (Ill. 1996).  Under Illinois law, when the conduct alleged for an ICFA claim "is merely a breach of contract or conduct proscribed by section 155, a Consumer Fraud Act claim on that basis is preempted by section 155."  *Cook ex rel. Cook v. AAA Life Ins. Co.*, 13 N.E.3d 20, 33 (Ill. App. Ct. 2014); *see also Leona's Pizzeria, Inc. v. Nw. Nat. Cas. Co.*, 203 F. Supp. 2d 930, 933 (N.D. Ill. 2002) (claim that an insurer is "lying" to "avoid paying" is "no more than claim for denial of benefits and breach of contract, and is preempted by § 155").  The only specific conduct identified by Plaintiffs is State Farm's use of the "new construction" setting, which is the same allegation that forms the basis for Plaintiffs' contract claim.  SAC ¶¶ 92, 96.  The ICFA claim would be pre-empted by Section 155 even if it could be asserted.

**C.     The Undisputed Facts Do Not Support An ICFA Claim.**

"To state a claim under the ICFA, Plaintiff must allege: (1) a deceptive act or practice by Defendant; (2) Defendant's intent that Plaintiff rely on the deception; (3)

that the deception occurred in the course of conduct of trade or commerce; (4) actual damage to Plaintiff; and (5) that the damage was proximately caused by Defendant." *New Park Manor, Inc. v. N. Pointe Ins. Co.*, No. 13 C 4537, 2013 WL 5408856, at *4 (N.D. Ill. Sept. 26, 2013).   Plaintiffs failed to allege any of these elements with the particularity required by Fed. R. Civ. P. 9(b).  *See* [Dkt. 28] pp. 14-16, [Dkt. 30] pp. 16-17.  The reason became clear in depositions: they were empty allegations, for Plaintiffs were not deceived in any respect regarding "the coverage of [State Farm's] policies and/or its practices with respect to estimating and adjusting property losses," as conclusorily asserted in their pleading.  SOF ¶ 87.  State Farm's estimate states on its face that the "new construction" setting was used.  *Id.* ¶ 18.  Plaintiffs were aware of, and objected to, State Farm's use of the setting from the face of the estimate.  *Id.* ¶¶ 88, 89.  Plaintiffs cannot prove they were misled concerning State Farm's use of the "new construction" setting, much less that they relied on any such misrepresentation or were thereby damaged.[11]

---

[11] Pennsylvania courts have recognized that allegations of reliance are implausible with the adjustment of first party insurance claims because such claims "are inherently and unavoidably arm's length and adversarial." *Smith v. State Farm Mut. Auto. Ins. Co.*, No. CIV.A. 11-7589, 2012 WL 508445, at *4 (E.D. Pa. Feb. 16, 2012) (citation omitted), *aff'd,* 506 F. App'x 133 (3d Cir. 2012); *see also Monck v. Progressive Corp.*, No. 3:15-CV-250, 2015 WL 1638574, at *7 (M.D. Pa. Apr. 13, 2015) (same).

## IV.  PLAINTIFFS CANNOT PROVE BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (COUNT IV).

"Pennsylvania does not recognize a separate breach of contractual duty of good faith and fair dealing where said claim is subsumed by a separately pled breach of contract claim." *Simmons v. Nationwide Mut. Fire Ins. Co.*, 788 F. Supp. 2d 404, 409 (W.D. Pa. 2011).  In cases involving first-party claims for insurance benefits, courts have applied this rule to hold that a claim for breach of the duty of good faith and fair dealing "is subsumed by the plaintiff's breach of insurance contract claim premised on the same conduct."  *Id.* (collecting cases); *Ridolfi v. State Farm Mut. Auto. Ins. Co.*, No. 1:15-CV-859, 2017 WL 4418423, at *5-6 (M.D. Pa. Oct. 5, 2017) (same); *Monck,* 2015 WL 1638574, at *4 (same).

Plaintiffs' breach of the implied covenant of good faith and fair dealing claim (Count IV) is subsumed by their breach of contract claim (Count III) premised on the same alleged misconduct: State Farm's use of the "new construction" setting in its estimate.  *Compare* SAC ¶ 121 *with* ¶ 115.  Because the two claims rely upon the same alleged conduct, summary judgment should be entered on Plaintiffs' implied covenant claim for the same reasons as their contract claim.

## V.  PLAINTIFFS CANNOT PROVE ANY RIGHT TO DECLARATORY RELIEF (COUNT V).

Summary judgment should be entered on Plaintiffs' declaratory relief claim because: (1) it is entirely duplicative of the contract claim, *Butta v. GEICO Cas. Co.,*

400 F. Supp. 3d 225, 233, 236 (E.D. Pa. 2019), *U.S. v. Vantage Tr. Fed. Credit Union*, No. 3:17-CV-0348, 2018 WL 306920, at *7 (M.D. Pa. Jan. 5, 2018); and (2) Plaintiffs cannot prove a breach of contract, which is the predicate for their request for a declaration that State Farm breached their Policy.  *See* SAC ¶ 128.

## VI. PLAINTIFFS CANNOT PROVE A UPTCPL VIOLATION (COUNT VI).

### A.    The UTPCPL Does Not Apply.

The UTPCPL does not apply to the mishandling of insurance claims alleged here.  *Kerr v. State Farm Mut. Auto. Ins. Co.*, No. 18-309, 2018 WL 5809989, at *6 (W.D. Pa. Nov. 6, 2018) ("Allegations of misconduct in the claims handling process are not actionable under the UTPCPL.") (citation omitted); *Mondron v. State Farm Mut. Auto. Ins. Co.*, No. CV 16-412, 2016 WL 7384183, at *5 (W.D. Pa. Dec. 21, 2016) (same).

Further, "only malfeasance, the improper performance of a contractual obligation, raises a cause of action under the [UTPCPL]." *Gardner v. State Farm Fire & Cas. Co.*, 544 F.3d 553, 564 (3d Cir. 2008).  "[A] claim for failure to pay the full amount and for failure to investigate . . . are forms of nonactionable 'nonfeasance' under the UTPCPL."  *Ke v. Liberty Mut. Ins. Co.*, No. CV 20-1591, 2020 WL 7353892, at *7 (E.D. Pa. Dec. 14, 2020).  Plaintiffs' UTPCPL claim rests on their allegation that State Farm is guilty of "undervaluing the adjustment of the

loss" (SAC ¶ 141), which alleges non-actionable nonfeasance, not malfeasance under the UTPCPL.

### B. Plaintiffs Cannot Prove the Elements of a UTPCPL Claim.

Plaintiffs appear to rely on the UTPCPL's catch-all provision for their claim: 73 Pa. C.S. § 201-2(4)(xxi).  To prove a claim under that provision, Plaintiffs must identify "affirmative deceptive acts by [defendant] upon which the plaintiffs justifiably relied to their financial detriment," *Angino v. Wells Fargo Bank, N.A.*, No. 1:15-CV-418, 2016 WL 787652, at \*10-11 (M.D. Pa. Feb. 19, 2016), *report and recommendation adopted*, 2016 WL 759161, *aff'd*, 666 F. App'x 204 (3d Cir. 2016); *see also See Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 222 (3d Cir. 2008), *as amended* (Nov. 6, 2008).  As discussed above regarding Plaintiffs' ICFA claim, Plaintiffs cannot prove any deception by State Farm, let alone that they relied on it to their financial detriment.  *See supra,* p. 16; *Bolus v. Nationwide Prop. & Cas. Co.,* No. 3:16-CV-00753, 2018 WL 1474669, at \*4 (M.D. Pa. Mar. 26, 2018) (UTPCPA claim failed because insured's alleged damages were caused by adjustment of claim, not by alleged misrepresentations).

## VII. PLAINTIFFS HAVE NO STANDING TO OBTAIN DECLARATORY OR INJUNCTIVE RELIEF BECAUSE THEY ARE NOT STATE FARM INSUREDS.

Lastly, Plaintiffs lack standing to seek injunctive and declaratory relief in Counts III, V and VI of the SAC because they face no "continuing" risk of future

harm as alleged in those Counts.  SAC ¶¶ 98, 129, 145.  It is well settled that "a party seeking equitable relief for a prospective injury . . . must show a 'likelihood of substantial and immediate irreparable injury' to establish standing." *Sherwin-Williams Co. v. Cty. of Delaware, Pa.*, 968 F.3d 264, 269 (3d Cir. 2020) (citation omitted).  Plaintiffs' requests for declaratory and injunctive relief are tied to an injury that supposedly occurs when State Farm uses a "new construction" labor efficiency setting to estimate repairs for partial losses.  SAC ¶¶ 92, 128, 141.  Plaintiffs are not at risk of sustaining such a future injury because they are no longer State Farm insureds.  SOF ¶ 94.[12]  Accordingly, summary judgment should be independently entered on Plaintiffs' requests for declaratory and injunctive relief for this reason as well.

## CONCLUSION

For the foregoing reasons, State Farm respectfully requests that the Court grant summary judgment in its favor on all claims asserted by Plaintiffs in this action.

Dated:  July 31, 2023                    Respectfully submitted,

/s/ *Joseph A. Cancila, Jr.*

---

[12] Numerous courts have recognized that plaintiffs who are no longer insured by the defendant lack standing to seek equitable relief.  *See, e.g., Jonathan Z. v. Oxford Health Plans*, No. 2:18-cv-00383-JNP-JCB, 2022 WL 3227909, at *3 (D. Utah Aug. 9, 2022); *Sullivan v. Liberty Mut. Ins. Co.*, No. 21 C 6084, 2022 WL 2105904, at *5 (N.D. Ill. June 10, 2022); *NBL Flooring, Inc. v. Trumbull Ins. Co.*, No. CIV.A. No. 10-4398, 2014 WL 615967, at *4 (E.D. Pa. Feb. 12, 2014); *Reid v. BCBSM, Inc.*, 984 F. Supp. 2d 949, 953–54 (D. Minn. 2013); *Clark v. Prudential Ins. Co. of Am.*, 736 F. Supp. 2d 902, 924-25 (D.N.J. 2010).

Joseph A. Cancila, Jr.
Nick Kahlon (*pro hac vice*)
Brian Neff (*pro hac vice*)
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison Street, Suite 2900
Chicago, IL 60602
(312) 471-8700
jcancila@rshc-law.com
nkahlon@rshc-law.com
bneff@rshc-law.com

Yolanda Konopacka DeSipio
BENNETT, BRICKLIN & SALTZBURG LLC
960 Harvest Drive
Building B-Suite 100
Blue Bell, PA 19422
(267) 654-1100
desipio@bbs-1aw.com

*Attorneys for Defendant*
*State Farm Fire and Casualty Company*

## CERTIFICATION OF WORD COUNT

I, JOSEPH A. CANCILA, JR., the undersigned, hereby certify subject to Fed. R. Civ. P. 11 that the foregoing brief (excluding the cover page, tables of contents and authorities, signature block and certifications) complies with the 5,000 word-count limit in Local Rule 7.8(b)(2).  According to the word count feature of the Microsoft Word word-processing system used to prepare the brief, the word count is 4,850.

July 31, 2023

/s/ *Joseph A. Cancila, Jr.*

## **CERTIFICATION OF SERVICE**

I, Joseph A. Cancila, Jr., the undersigned, hereby certify that on July 31, 2023, I served a copy of State Farm Fire and Casualty Company's Brief in Support of Motion for Summary Judgment, with accompanying documents, upon Plaintiffs' counsel listed below via the Court's Electronic Filing System and E-mail.

> Harry A. Cummins, Esquire
> Roman Rabinovich, Esquire
> Lee Squitieri, Esquire
> Wilkofsky, Friedman, Karel & Cummins
> 299 Broadway, Suite 1700
> New York, NY 10007

/s/  *Joseph A. Cancila, Jr.*