## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMIE BELOTTI and<br>BECKY BELOTTI | : | CIVIL ACTION NO. 3:22-cv-01284-MEM |
| Plaintiffs, | : | |
| | : | (Hon. Judge Malachy E. Mannion) |
| vs. | : | |
| STATE FARM FIRE AND<br>CASUALTY COMPANY, | : | |
| Defendant. | : | |

## STATE FARM FIRE AND CASUALTY COMPANY'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

In accordance with Local Rule 56.1, Defendant State Farm Fire and Casualty Company ("State Farm") submits this statement of the material facts, as to which it contends there is no genuine issue to be tried.

1. Plaintiffs Jamie Belotti and Becky Belotti ("Plaintiffs" or the "Belottis") previously owned a house located at 156 Foote Ave. in Duryea, Pennsylvania ("the Property") that was damaged by a fire on September 22, 2019. SAC ¶¶ 2, 61.

2. The Property was insured by a policy issued by State Farm ("the Policy") and Plaintiffs made a claim under the Policy for the loss. SAC ¶¶ 57, 63.

3.      A copy of the Policy Record, which includes the Policy, is attached to the declaration of Nick Kahlon (hereafter "Kahlon Decl.") as Exhibit 1.

4.      An excerpted copy of the Belotti Claim Record is attached to the declaration of Mark Shumate (hereafter "Shumate Decl.") as Exhibit 1.

5.      Plaintiffs have characterized the damage to the Property caused by the fire as "catastrophic" and "severe."  SAC ¶ 61; Kahlon Decl. Ex. 2 (J. Belotti Dep. Tr.) p. 54:16-19, Ex. 3 (B. Evans Dep. Tr.) p. 108:12-15.

6.      Mr. Belotti notified State Farm of the fire on September 22, 2019, and the next day a State Farm claim specialist visited the site to inspect the loss.  Shumate Decl. Ex. 1B (File History 9-22-19 and 9-23-19 notes, SFBELOTTI00076-78).

7.      On or about October 8, 2019, State Farm was advised by Mr. Belotti that he had retained a public adjuster, Brian Evans of Eastern Public, LLC, to assist Plaintiffs with their insurance claim for the loss to the Property.  *Id.* (File History 10-8-19 note, BELOTTI00074).

8.      Mr. Belotti relied on Mr. Evans to handle Plaintiffs' insurance claim. Kahlon Decl. Ex. 2 (J. Belotti Dep. Tr.) p. 84:18-21.

9.      Mrs. Belotti had no involvement in the handling of Plaintiffs' insurance claim or interacting with State Farm.  *Id.,* p. 38:19-40:11, Ex. 5 (B. Belotti Dep. Tr.) p. 14:18-25.

10.     State Farm retained a contractor, Edward Gieda, to assist with the evaluation of Plaintiffs' claim and on October 25, 2019, Mr. Gieda and Plaintiffs' public adjuster jointly inspected the loss.  Shumate Decl. Ex. 1B (File History 10-19-19 and 11-5-19 notes, SFBELOTTI00071-72), Ex. 1E (State Farm estimate, SFBELOTTI08515).

11.     Mr. Gieda sent his initial draft estimate to State Farm on or about November 18, 2019.  *Id.,* Ex. 1B (File History 11-18-19 note, SFBELOTTI00071).

12.     Mr. Gieda's initial draft estimate, and State Farm's estimates, were prepared using an estimating software tool called Xactimate, licensed by Xactware (which is now owned by Verisk Analytics, Inc.).   SAC ¶¶ 31-32; Shumate Decl. Ex. 1B (File History 11-26-19 and 12-2-19 notes, SFBELOTTI00070-71); Kahlon Decl. Ex. 3 (B. Evans Dep. Tr.) p. 61:6-8.

13.     After receiving Mr. Gieda's initial draft estimate, State Farm made changes to the estimate.  Shumate Decl. Ex. 1B (File History 11-18-19 note, SFBELOTTI00071).

14.     After investigating the circumstances of the loss and reviewing the repair line items contained in Mr. Gieda's initial draft estimate, and after discussing the appropriate labor efficiency setting with Mr. Gieda, State Farm's claim specialist James McDonnell selected Xactimate's "new construction" labor efficiency for the estimate.  *Id.*, Ex. 1B (File History 11-22-19 note, SFBELOTTI00071), Ex. 1C (11-

26-19 entry, SFBELOTTI00245); Kahlon Decl. Ex. 4 (J. McDonnell Dep. Tr.) pp. 57:5-58:1, 58:17-24 61:7-18, 65:24-68:11; Kahlon Decl. Ex. 7 (Berryman Report) pp. 13-21 (explaining Xactimate labor efficiency settings); Kahlon Decl Ex. 8 (Conley Report.) pp. 16-17 (explaining Xactimate labor efficiency settings).

15.   Mr. McDonnell testified that he selected the "new construction" labor efficiency because Plaintiffs' home would not be occupied during the repair work, so the contractor would not have to move furniture or schedule things at the convenience of the policyholder, and because once the demolition was completed and the wall finishes removed, the repair work essentially would be new construction.  Kahlon Decl. Ex. 4 (J. McDonnell Dep. Tr.) pp. 57:5-58:1; *see also id.* pp. 61:7-18, 65:24-68:11; Kahlon Decl. Ex. 7 (Berryman Report) pp. 20, 26 ¶ 8.

16.   On December 2, 2019, State Farm provided Mr. Evans and Mr. Belotti with State Farm's estimate of the repair costs for Plaintiffs' loss, dated December 2, 2019 ("the Estimate").   Shumate Decl. Ex. D (12-2-19 State Farm letter, SFBELOTTI05125-30), Ex. E (12-2-19 State Farm estimate, SFBELOTTI08513-85).

17.   State Farm estimated the Replacement Cost Value ("RCV") of the damage was $172,015.39 and the Actual Cash Value ("ACV") payment, after applying the Policy's deductible, was $130,852.61.  Shumate Decl. Ex. 1E pp. SFBELOTTI08515, 08517.

18.    The Estimate states on its face that the "New Construction" labor efficiency setting was used for the estimate.  *See id.* p. SFBELOTTI 08515; Kahlon Decl. Ex. 3 (B. Evans Dep. Tr.) pp. 72:22-73:5.

19.    Along with the estimate, State Farm sent a check to Plaintiffs with its Actual Cash Value payment of $130,852.61 on December 2, 2019.  Shumate Decl. Ex. 1D (12-2-19 State Farm letter, SFBELOTTI 05125-30).

20.    Plaintiffs did not take issue with State Farm's estimate until two months later, when, on or about February 3, 2020, Mr. Evans provided State Farm with a repair estimate he had prepared for the loss to Plaintiffs' home ("the Evans Estimate").[1]   Shumate Decl. Ex. 1H (2-3-20 B. Evans email to M. Shumate, SFBELOTTI02807); Kahlon Decl. Ex. 3 (B. Evans Dep. Tr.) pp. 112:16-113:9.

21.    Plaintiffs have no explanation for this two-month delay.  Kahlon Decl. Ex. 2 (J. Belotti Dep. Tr.) p. 107:8-13, Ex. 3 (B. Evans Dep. Tr.) p. 113:10-14.

22.    The Evans Estimate had a RCV of $374,069.77 for the damage to Plaintiffs' home.  Shumate Decl. Ex. 1G p. SFBELOTTI02869.

---

[1] The Evans Estimate is dated January 10, 2020, but it is undisputed it was not provided to State Farm until February 3, 2020.   Shumate Decl. Ex. 1H p. SFBELOTTI02807 (2-3-20 B. Evans email to M. Shumate); Kahlon Decl. Ex. 3 (B. Evans Dep. Tr.) pp. 112:16-113:9.

23.     The Evans Estimate was prepared using Xactimate estimating software, with the Restoration/Service/Remodel Labor Efficiency setting applied.  Shumate Decl. Ex. 1G p. SFBELOTTI02816.

24.     On March 4, 2020, State Farm advised Plaintiffs it was willing to have its contractor re-inspect the property in order to attempt to reconcile the parties' respective estimates.  Shumate Decl. Ex. 1I p. SFBELOTTI05034.

25.     When a physical re-inspection became impracticable due to COVID-19 restrictions, State Farm encouraged Plaintiffs' public adjuster on April 7, 2020, to discuss the areas of disagreement with State Farm's contractor.  Shumate Decl. Ex. 1J (4-7-20 M. Shumate letter to B. Evans, SFBELOTTI05025-26).

26.     After more encouragement from State Farm to do so, the Plaintiffs' public adjuster contacted State Farm's contractor nearly two months later.  Shumate Decl. Ex. 1L (5-14-20 M. Shumate letter to B. Evans, SFBELOTTI05009-10), Ex. 1N (6-5-20 B. Evans email to M. Shumate, SFBELOTTI04974-75).

27.     The Policy provides that: "If you and we disagree on the amount of loss, either one can demand that the amount of the loss be set by appraisal."  Kahlon Decl. Ex. 1 (Policy) P032 ¶ 4.

28.     By letter dated May 14, 2020, State Farm advised Plaintiffs that they could expedite the resolution of their claim by requesting appraisal.  Shumate Decl. Ex. 1L (5-14-20 M. Shumate letter to B. Evans, SFBELOTTI05009-10).  By email

dated May 21, 2020, Plaintiffs' public adjuster rejected State Farm's suggestion that Plaintiffs seek an appraisal.  *Id.* Ex. 1M (5-21-20 B. Evans email to M. Shumate, SFBELOTTI04976-77).

29.     The parties were unable to resolve their differences concerning the estimated repair costs for the damage to Plaintiffs' home and, by letter dated June 16, 2020, State Farm formally demanded appraisal.  Shumate Decl. Ex. 1O (6-16-20 M. Shumate letter to B. Evans, SFBELOTTI04964-67); Kahlon Decl. Ex. 4 (J. McDonnell Dep. Tr.) p. 21:4-10.

30.     By letter dated June 16, 2020, Plaintiffs' public adjuster objected to State Farm's appraisal demand.  Shumate Decl. Ex. 1P (6-16-20 B. Evans letter to M. Shumate, SFBELOTTI 05257-59).

31.     On June 25, 2020, State Farm agreed to temporarily put [its] demand for Appraisal on hold" pending the outcome of further discussions between Plaintiff's public adjuster and State Farm's contractor.  Shumate Decl. Ex. 1Q (6-25-20 M. Shumate email to B. Evans, SFBELOTTI 04950).

32.     When Mr. Gieda was unable to reach agreement with the public adjuster resolving the parties' competing estimates, State Farm renewed its appraisal demand by letter dated August 5, 2020.  Shumate Decl. Ex. 1S (8-5-20 M. Shumate letter to B. Evans, SFBELOTTI04916).

33.     On August 26, 2020, State Farm informed Plaintiffs' public adjuster that State Farm named Gary Popolizio as its appraiser.  Shumate Decl. Ex. 1T (8-26-20 M. Shumate letter to B. Evans, SFBELOTTI04897-98).

34.     Plaintiffs did not advise State Farm of the naming of their appraiser until October 5, 2020.  Shumate Decl. Ex. 1U (10-5-20 B. Evans email to M. Shumate, SFBELOTTI 05232-33).

35.     The appraisal process was prolonged, due in part to complications caused by the COVID-19 pandemic, weather issues, family deaths experienced by Plaintiffs' appraiser, and Plaintiffs halting the process and cancelling a scheduled inspection apparently in order to consult with lawyers.  Shumate Decl. Exs. 1B (File History 2-22-21 and 3-22-21 notes, SFBELOTTI00037), 1W (12-22-20 G. Popolizio email to J. McDonnell, SFBELOTTI01474-75), 1CC (4-16-21 M. Shumate letter to B. Evans, SFBELOTTI00635-36), 1DD (5-21-21 M. Shumate letter to B. Evans, SFBELOTTI04079-80); Kahlon Decl. Ex. 3 (B. Evans Dep. Tr.) p. 51:18-21, Ex. 4 (J. McDonnell Dep. Tr.) p. 34:7-11.

36.     At the time State Farm demanded appraisal, the parties were approximately $200,000 apart in their respective Replacement Cost ("RC") estimates. *Supra* ¶¶ 17, 22.

37.     Only a small portion of the difference (around $20,000) between the parties' RC estimates was due to the use of the "new construction" labor efficiency

setting in State Farm's estimate.  Kahlon Decl. Ex. 9 (J. Major Rough Tr.) pp. 43:15-44:2.

38.     Mr. Belotti acknowledges that even if State Farm had changed the Labor Efficiency setting in its Estimate to the Restoration/Service/Remodel setting, there still would have been other disputed amounts that needed to be resolved. Kahlon Decl. Ex. 2 (J. Belotti Dep. Tr.) p. 116:7-12.

39.     The appraiser selected by State Farm and the appraiser selected by Plaintiffs reached an agreement on the amount of Plaintiffs' loss and, on or about December 23, 2020, entered their appraisal award ("the Award").  Shumate Decl. Ex. 1GG (appraisal award and estimate, SFBELOTTI00544-58).

40.     In their Award, the appraisers agreed that the RCV and ACV amounts for Plaintiffs' loss are $267,382.04 and $240,643.84, respectively.  *Id.* SFBELOTTI 00546.

41.     Plaintiffs have never sought to invalidate the Appraisal Award and admit they are bound by it.  Kahlon Decl. Ex. 2 (J. Belotti Dep. Tr.) pp. 58:8-10, 146:3-7, Ex. 3 (B. Evans Dep. Tr.) pp. 48:22-49:3.

42.     Plaintiffs admit they are required to pay their appraiser's fees under the Policy.  *Id.* Ex. 2 (J. Belotti Dep. Tr.) p. 96:22-97:13; Kahlon Decl. Ex. 1 (Policy) P032 ¶ 4.

43.     The RCV and ACV amounts in the Award are based on an estimate prepared by the appraiser selected by State Farm (Gary L. Popolizio of GLP Construction Management, Inc.) and agreed to by the appraiser selected by Plaintiffs (Ismail Bruncaj) ("the Popolizio estimate").     Shumate Decl. Ex. 1GG SFBELOTTI00544-58.

44.     The Popolizio estimate was not prepared using Xactimate.   Kahlon Decl. Ex. 2 (J. Belotti Dep. Tr.) p. 59:4-7, Ex. 3 (B. Evans Dep. Tr.) p. 56:20-23.

45.     The Popolizio Estimate does not use either of the labor efficiency settings contained within the Xactimate software, *i.e.,* neither Xactimate's "New Construction" nor "Restoration/Service/Remodel" labor efficiency settings. *Id.,* Ex. 2 (J. Belotti Dep. Tr.) p. 59:8-11, Ex. 3 (B. Evans Dep. Tr.) pp. 56:24-57:4.

46.     The total ACV amount paid to Plaintiffs by State Farm prior to the Appraisal Award was $134,288.27.   Shumate Decl. Ex. 1A (Financial History, Payments, listing payments on 10-3-19 ($1,497.66), 12-2-19 ($130,852.61) and 12-20-19 ($1,938)).

47.     On or about February 1, 2022, State Farm made an additional ACV payment to Plaintiffs in the amount of $66,690.45, which is the difference between State Farm's previous total ACV payments and the ACV amount of the Award. Shumate Decl. Ex. 1A (Financial History, Payments, 2-1-22 entry, SFBELOTTI00023).

48.     Plaintiffs' full ACV was ultimately paid on the basis of the Appraisal Award, not State Farm's estimate.  Kahlon Decl. Ex. 2 (J. Belotti Dep. Tr.) pp. 58:8-10, 59:4-11, Ex. 3 (B. Evans Dep. Tr.) pp. 55:21-57:4.  Plaintiffs cannot identify any additional ACV amounts they claim are still owed.  Kahlon Decl. Ex. 2 (J. Belotti Dep. Tr.) 146:12-20.

49.     Plaintiffs and their public adjuster cannot identify any evidence of bad faith conduct by State Farm during the appraisal.  Kahlon Decl. Ex. 2 (J. Belotti Dep. Tr.) pp. 162:20-163:2, Ex. 3 (B. Evans Dep. Tr.) p. 51:6-14, Ex. 5 (B. Belotti Dep. Tr.) pp. 27:25-28:16.

50.     Plaintiffs contend State Farm "breached the contract" by using Xactimate's "new construction" setting to estimate the value of their loss, rather than the software's "repair/reconstruction" setting.  SAC ¶ 115.

51.     There is no provision in Plaintiffs' Policy that requires State Farm to use any specific repair estimating software, much less one particular setting in that software over another.   Kahlon Decl. Ex. 1.

52.     Plaintiffs admit: "The policy does not prescribe a specific method of computation nor require a specific method of estimation."  SAC ¶ 25.

53.     An insurer's estimate is a projection of anticipated costs to repair the damage caused by a loss.  Kahlon Decl. Ex. 2 (J. Belotti Dep. Tr.) pp. 32:1-7, 33:11-14, 33:20-24, Ex. 3 (B. Evans Dep. Tr.) pp. 64:22-65:7, 65:25-66:3.

54.     An estimate can be, and with large loss claims often is, adjusted over time as the insurer receives new information relating to the work needed or the cost of appropriate repairs.  *Id.*; *see also* Kahlon Decl. Ex. 7 (Berryman Report) pp. 3-4.

55.     State Farm adjusted its estimate of the repair costs for Plaintiffs' dwelling and made a supplemental payment based on additional information from Plaintiffs.  Shumate Decl. Ex. 1F (12-6-19 State Farm estimate summary page, SFBELOTTI02231).

56.     Plaintiffs admit that what matters is the sufficiency of State Farm's "total" ACV payments, not its initial estimate or a "discrete" component of its initial payment.  Kahlon Decl. Ex. 2 (J. Belotti Dep. Tr.) pp. 33:6-10, 15-19, Ex. 3 (B. Evans Dep. Tr.) p. 93:11-22; *see also* Kahlon Decl. Ex. 7 (Berryman Report) p. 69 ¶ 15.

57.     Plaintiffs admit Xactimate's "new construction" setting is used for "'ground-up' reconstruction or large partial losses …"  SAC ¶ 42.

58.     Xactimate' "Pricing Methodology Summary," cited in Plaintiffs' pleading, explicitly states: "portions of a large partial loss can be addressed by selecting the 'New Construction' labor efficiency …"  Dkt. 24-4 p. 3; *see also* Kahlon Decl. Ex. 7 (Berryman Report) pp. 13, 19-20.

59.     State Farm's Operation Guide in effect as of the date of Plaintiffs' loss refers to and quotes the language in Xactimate's "Pricing Methodology Summary"

regarding the "Restoration/Service/Remodel" and "New Construction" labor efficiency settings. *See* Shumate Decl. Ex. 2 (Operation Guide 75-07 dated 12-19-18), Kahlon Decl. Ex. 6 (Moss Dep. Tr.) pp. 53:22-54:1, 54:22-55:2, 65:14-24, 100:13-101:19, 102:10-11, 126:10-15.

60.    Plaintiffs admit that portions of a large partial loss can be addressed by selecting the 'New Construction' labor efficiency setting in Xactimate.  Kahlon Decl. Ex. 2 (J. Belotti Dep. Tr.) p. 63:13-20, Ex. 3 (B. Evans Dep. Tr) pp. 88:15-21, 89:23-90:3.

61.    Plaintiffs' fire loss was a large partial loss.  SAC ¶ 61; Kahlon Decl. Ex. 2 (J. Belotti Dep. Tr.) pp. 54:16-19, 143:4-11, 190:12-17, Ex. 3 (B. Evans Dep. Tr.) p. 108:12-15.

62.    Plaintiffs characterized their loss as a constructive total loss requiring "total replacement."  Kahlon Decl. Ex. 2 (J. Belotti Dep. Tr.) pp. 117:4-20, 190:5-17, Ex. 3 (B. Evans Dep. Tr.) p. 48:12-21.

63.    Plaintiffs acknowledge that the determination as to when it is appropriate to use Xactimate's "new construction" setting over the "restoration, service and remodel" setting "is up to the judgment of the estimator."  Shumate Decl. Ex. 1G (1-23-20 B. Evans letter, SFBELOTTI02810); Kahlon Decl. Ex. 2 (J. Belotti Dep. Tr.) pp. 108:18-109:2, Ex. 3 (B. Evans Dep. Tr). pp. 84:12-18, 140:9-141:15.

64.    State Farm's adjuster determined the "new construction" setting was appropriate given the extent of damage caused by the fire to Plaintiffs' home, and numerous other factors that both sides agree weigh in favor of using the setting (such as the inclusion of additional labor hours in State Farm's estimate and the fact the home would be unoccupied during the repairs).  *Supra* ¶¶ 14, 15; Kahlon Decl. Ex. 3 (B. Evans Dep. Tr.) pp. 84:19-25, 91:5-91:10, Kahlon Decl. Ex. 7 (Berryman Report) pp. 23-27.

65.    In the Policy, State Farm agreed to "pay the cost to repair or replace" the Plaintiffs' damaged property "subject to" to a two-step loss settlement provision: (1) "until actual repair or replacement is completed, [State Farm] will pay only the actual cash value" of the damaged property ("ACV" payments) ; and (2) "when the repair or replacement is actually completed, [State Farm] will pay the covered additional amount you [Plaintiffs] actually and necessarily spend" on repairs, provided the work is completed "within two years" of the loss and State Farm is notified "within 30 days" after the work's completion ("RC" payments).  Kahlon Decl. Ex. 1 (Policy) P029.

66.    Plaintiffs never made any repairs for the loss to the Property and instead sold it "as is" to Mr. Belotti's brother-in-law.  Kahlon Decl. Ex. 2 (J. Belotti Dep. Tr.) pp. 98:23-99:9, 100:2-7, 147:24-148:7, 148:18-21.

67.     State Farm voluntarily undertook to permit Plaintiffs' purchase of a new home to act as a substitute for undertaking repairs to the Property, whereby the purchase price of the new home essentially functioned as a stand-in for repair costs of the Property.  Shumate Decl. Ex. 1AA (1/11/21 M. Shumate email to B. Evans, SFBELOTTI01169).

68.     The purchase price of Plaintiffs' new home was $239,900.  Dkt. 29-6, 29-7; Kahlon Decl. Ex. 2 (J. Belotti Dep. Tr.) p. 150:13-18.

69.     Pursuant to the voluntary undertaking referred to in paragraph 67, State Farm made a $40,162.78 payment for replacement cost benefits to Plaintiffs, in addition to $200,978.72 in ACV payments by State Farm pre- and post-appraisal.  Shumate Decl. Ex. 1Y (12-30-20 Shumate email, SFBELOTTI004099-4101); *supra* ¶¶ 46, 47.

70.     Plaintiffs were unhappy with the Property prior to the loss, and State Farm's payments helped them purchase a new home.  Kahlon Decl. Ex. 2 (J. Belotti Dep. Tr.) p. 39:16, Ex. 5 (B. Belotti Dep. Tr.) pp. 22:3-23:6.

71.     Plaintiffs purchased their new home from an investment company owned by Mr. Belotti and his accountant.  Dkt. 29-7; Kahlon Decl. Ex. 2 (J. Belotti Dep. Tr.) pp. 40:18-20, 120:9-14.

72.     The purchase price was agreed to between Mr. Belotti and his accountant and reflected all the money put into the home by their investment

company, including the initial purchase and all repairs.  Kahlon Decl. Ex. 2 (J. Belotti Dep. Tr.) pp. 120:9-122:7, 150:13-18.

73.     The total amount Plaintiffs have already received from State Farm for the damage to their home ($241,141.50) exceeds the amount Plaintiffs paid for their new home ($239,900), which Plaintiffs testified included the cost of all repairs to that property.  Kahlon Decl. Ex. 2 (J. Belotti Dep. Tr.) pp. 150:13-18; 153:21-154:3; *supra* ¶¶ 68, 69.

74.     Plaintiffs previously represented in filings with the Court that the purchase price of their new home did not include their repairs to the new property. Dkt. 29-3 (10-26-22 B. Evans email).  Their public adjuster admitted that, in view of Plaintiffs' testimony, his calculation of the replacement cost benefits allegedly owed by State Farm is "obviously" wrong.  Kahlon Decl. Ex. 3 (B. Evans Dep. T.) pp. 181:20-182:5.

75.     The Policy states: "to receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss."  Kahlon Decl. Ex. 1 (Policy) P029.

76.     State Farm had extensive communications with Plaintiffs and their public adjuster and timely responded to their inquiries and requests.  Kahlon Decl. Ex. 8 (Conley Report) pp. 2-16 (detailing communications in Claim Record).

77.     Plaintiffs were responsible for much of the delay in the adjustment of their claim.  *Supra* ¶¶ 20-21, 25-26, 28-35.

78.     State Farm never required that Plaintiffs sign a release as a condition of State Farm making the additional ACV payment following the Award.  Kahlon Decl. Ex. 8 (Conley Report) p. 37.

79.     State Farm paid Plaintiff over $400,000 in the aggregate for the damage to their home, personal property and for their additional living expenses.  Shumate Decl. Ex. 1A SFBELOTTI00022-25.

80.     State Farm made a voluntary advance payment of $20,000 on Plaintiffs' personal property damage claim.  Shumate Decl. Ex. 1B (File History 10-17-19 note, SFBELOTTI00072-73).

81.     State Farm voluntarily extended Plaintiffs' Additional Living Expense ("ALE") benefits at least three times.  Shumate Decl. Ex. 1L (5-14-20 M. Shumate letter to B. Evans, SFBELOTTI05009-10), 1BB (2-10-21 J. McDonnell email, SFBELOTTI04121), 1CC (4-16-21 M. Shumate letter to B. Evans, SFBELOTTI00635-36).

82.     Mrs. Belotti described the living accommodations State Farm provided for nearly two years after the fire as a "nice place."  Kahlon Decl. Ex. 5 (B. Belotti Dep. Tr.) p. 23:15-25.

83.     State Farm voluntarily twice extended the contractual one-year deadline for filing suit.   Shumate Decl. Ex. 1V (11/24/20 M. Shumate letter, SFBELOTTI04489-90).

84.     The only facts identified by Plaintiffs connecting their claims to the State of Illinois are that State Farm is headquartered in Illinois and issued its policies from there.   SAC ¶¶ 3, 97.

85.     Plaintiffs entered into their insurance contract in Pennsylvania.  Kahlon Decl. Ex. 1 (Policy) P004.  The Property is in Pennsylvania and the loss occurred in Pennsylvania.  *Id.*; SAC ¶¶ 2, 61.

86.     The Belottis' insurance claim was handled in Pennsylvania by State Farm personnel located in Pennsylvania.  Shumate Decl. ¶ 3.

87.     Plaintiffs cannot identify any deception regarding "the coverage of [State Farm's] policies and/or its practices with respect to estimating and adjusting property losses," as alleged in their pleading.  Kahlon Decl. Ex. 2 (J. Belotti Dep. Tr.) pp. 95:24-96:6, 187:2-188:16; Ex. 3 (B. Evans Dep. Tr.) pp. 73:17-23, 99:6-20.

88.     Plaintiffs' public adjuster was aware that State Farm had used the "New Construction" labor efficiency setting from the face of State Farm's estimate. Kahlon Decl. Ex. 3 (B. Evans Dep. Tr.) pp. 72:22-73:11.

89.     Plaintiffs' public adjuster objected to State Farm's use of the New Construction setting in the Estimate.  Shumate Decl. Ex. 1G (1-23-20 B. Evans letter, SFBELOTTI02809-10).

90.     The only alleged omission or concealment Mr. Belotti could identify was that State Farm's contractor initially used Xactimate's "restoration, service and remodel" setting in his draft estimate, and State Farm changed this to the "new construction" setting when revising and finalizing the estimate.  Kahlon Decl. Ex. 2 (J. Belotti Dep. Tr.) pp. 187:24-188:16.

91.     Mrs. Belotti could not identify any misrepresentations, omissions or concealment of information by State Farm.  Kahlon Decl. Ex. 5 (B. Belotti Dep. Tr.) p. 27:12-24.

92.     Plaintiffs did not rely on any misrepresentation, omission or concealment by State Farm.  Kahlon Decl. Ex. 2 (J. Belotti Dep. Tr.) pp. 95:24-96:6 (admitting he never read the Policy), 184:18-21 (agreeing that he relied upon his public adjuster in the handling of insurance claim).

93.     Plaintiffs have not identified any facts imposing a duty on the part of State Farm to disclose changes made to a draft estimate before it is ever sent to an insured.  SAC.

94.     Plaintiffs are no longer State Farm insureds.  Peppel Decl. [Dkt. 27-4] ¶ 3.

95.     State Farm is proffering in this matter the expert testimony of Linda Kaiser Conley.  Kahlon Decl. Ex. 8 (Conley Report).

96.     Ms. Conley has decades of experience in the insurance industry in Pennsylvania and previously served as the Pennsylvania Insurance Commissioner. *Id.* p. 2.

97.     In her report, Ms. Conley provides a detailed discussion of the adjustment of the Belotti claim and her assessment of various assertions by Plaintiffs that State Farm's actions were contrary to the Policy or otherwise unlawful.  *Id*.

98.     Ms. Conley rejects Plaintiffs' assertions and ultimately concludes that "State Farm did not engage in wrongful, inappropriate or unreasonable activities during its handling of the Belottis' individual claim for damage to their dwelling." *Id.* p. 42.

99.     State Farm is proffering in this matter the expert testimony of Michael J. Berryman.  Kahlon Decl. Ex. 7 (Berryman Report).

100.    Mr. Berryman is the President and CEO of the general contractor and consulting firm Berryman Enterprises, Inc., and has many years of experience in the construction industry.  *Id.* pp. 1-3.

101.    Mr. Berryman explains, based on his real-world construction experience, why the "New Construction" labor efficiency setting was appropriately used in State Farm's estimates for the Belottis' loss, and could likewise be used for

other large partial losses, as stated by Xactware and Verisk, depending on the site-specific conditions of a particular loss. *Id.* pp. 19-33.

Dated:  July 31, 2023                    Respectfully submitted,

                                         /s/ *Joseph A. Cancila, Jr.*
                                         Joseph A. Cancila, Jr.
                                         Nick Kahlon (*pro hac vice*)
                                         Brian Neff (*pro hac vice*)
                                         RILEY SAFER HOLMES & CANCILA LLP
                                         70 W. Madison Street, Suite 2900
                                         Chicago, IL 60602
                                         (312) 471-8700
                                         jcancila@rshc-law.com
                                         nkahlon@rshc-law.com
                                         bneff@rshc-law.com

                                         Yolanda Konopacka DeSipio
                                         BENNETT, BRICKLIN & SALTZBURG LLC
                                         960 Harvest Drive
                                         Building B-Suite 100
                                         Blue Bell, PA 19422
                                         (267) 654-1100
                                         desipio@bbs-1aw.com

                                         *Attorneys for Defendant*
                                         *State Farm Fire and Casualty Company*