# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

---

| | | |
|---|---|---|
| JAMIE BELOTTI and | : | |
| BECKY BELOTTI | : | CIVIL ACTION NO. 3:22-cv- |
| | : | 01284-MEM |
| Plaintiffs, | : | |
| | : | (Hon. Judge Malachy E. Mannion) |
| vs. | : | |
| | : | |
| STATE FARM FIRE AND | : | |
| CASUALTY COMPANY, | : | |
| | : | |
| Defendant. | : | |

---

## STATE FARM FIRE AND CASUALTY COMPANY'S REPLY
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................1

ARGUMENT .......................................................................................................2

I.     SUMMARY JUDGMENT SHOULD BE ENTERED ON PLAINTIFFS' BREACH OF CONTRACT CLAIM. ............................................................2

     A.    State Farm Has No Contractual Obligation to Use One Labor Efficiency Setting over Another when Estimating a Loss. ...................2

     B.    Plaintiffs Cannot Contend State Farm Breached the ACV Provision...6

     C.    Plaintiffs No Longer Contend State Farm Breached the RC Provision. ..............................................................................................8

     D.    Plaintiffs Cannot Manufacture Implied Contract Terms......................8

II.    THERE IS NO EVIDENCE OF BAD FAITH (COUNT I)..........................11

III.   PLAINTIFFS CANNOT SUSTAIN THEIR ICFA CLAIM (COUNT II). ..14

     A.    The ICFA Does Not Apply Extraterritorially. ....................................14

     B.    Plaintiffs' ICFA Claim Is Preempted...................................................17

     C.    Plaintiffs Have Not Sufficiently Identified Any Deceptive Acts........17

IV.   THERE IS NO UPTCPL VIOLATION (COUNT VI). ...............................17

V.    PLAINTIFFS FAIL TO ADDRESS THEIR LACK OF STANDING TO OBTAIN DECLARATORY OR INJUNCTIVE RELIEF............................20

CONCLUSION ...................................................................................................20

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                      **Page(s)**

*Andrichyn v. TD Bank, N.A.*,
  93 F. Supp. 3d 375 (E.D. Pa. 2015) ....................................................................10

*Angino v. Wells Fargo Bank, N.A.*,
  No. 1:15-CV-418, 2016 WL 787652 (M.D. Pa. Feb. 19, 2016) .........................19

*Ankele v. Hambrick*,
  286 F. Supp. 2d 485 (E.D. Pa. 2003), *aff'd*, 136 F. App'x 551 (3d
  Cir. 2005) ............................................................................................................20

*Avery v. State Farm Mut. Auto. Ins. Co.*,
  835 N.E.2d 801 (Ill. 2005) ............................................................14, 15, 16, 17

*Bellezza v. Duffy*,
  2020 WL 5414761 (M.D. Pa. Sept. 9, 2020) .......................................................3

*Bernert v. State Farm and Cas. Co.*,
  No. 10-12359, 2012 WL 1060089 (E.D. Mich. Mar. 29, 2012) ..........................4

*Bolus v. Nationwide Prop. & Cas. Co.*,
  No. 3:16-CV-00753, 2018 WL 1474669 (M.D. Pa. Mar. 26, 2018) .................19

*Bubis v. Prudential Prop. & Cas. Ins. Co.*,
  718 A.2d 1270 (Pa. Super. Ct. 2000) .................................................................10

*Catania v. Zurich Am. Ins. Co.*,
  No. CV 13-1278, 2014 WL 12599599 (W.D. Pa. June 16, 2014) .....................11

*Cicon v. State Farm Mut. Auto. Ins. Co.*,
  No. 3:14-CV-2187, 2015 WL 926148 (M.D. Pa. Mar. 4, 2015) .........................9

*Cresswell v. Pennsylvania Nat. Mut. Cas. Ins. Co.*,
  820 A.2d 172 (Pa. Super. Ct. 2003) ...................................................................11

*Crichton v. Golden Rule Ins. Co.*,
  576 F.3d 392 (7th Cir. 2009) .............................................................................15

*D'Ambrosio v. Pennsylvania Nat'l Mut. Ins. Co.*,
  431 A.2d 966 (Pa. 1981) ......................................................................................9

*Dagit v. Allstate Prop. & Cas. Ins. Co.*,
   2017 WL 395489 (E.D. Pa. Jan. 30, 2017) ............................................................ 6

*Enwereji v. State Farm Fire and Cas. Co.*,
   No. 10-cv-4967, 2011 WL 3240866 (E.D. Pa. July 28, 2011) ............................ 4

*Fox v. State Farm Fire & Cas. Co.*,
   Civ. Action 20-18131 (D.N.J) ............................................................................. 7

*Gardner v. State Farm Fire & Cas. Co.*,
   544 F.3d 553 (3d Cir. 2008) ................................................................................ 18

*Gibson v. Progressive Specialty Ins. Co.*,
   2015 WL 2337294 (E.D. Pa. May 13, 2015) ....................................................... 18

*Hayes v. Harleysville Mut., Ins. Co.*,
   841 A.2d 121 (Pa. Super. 2003) .......................................................................... 13

*Hollister v. U.S. Postal Svc.*,
   142 Fed. App'x. 576 (3rd Cir. 2005) ............................................................. 8, 17

*Hunt v. U.S. Tobacco Co.*,
   538 F.3d 217 (3d Cir. 2008) ................................................................................ 19

*Ice City, Inc. v. Ins. Co. of N. Am.*,
   314 A.2d 236 (Pa. 1974) ................................................................................. 7, 13

*In re IT Group, Inc.*,
   448 F.3d 661 (3d Cir. 2006) ................................................................................ 10

*Ke v. Liberty Mut. Ins. Co.*,
   No. CV 20-1591, 2020 WL 7353892 (E.D. Pa. Dec. 14, 2020) ......................... 18

*Kerr v. State Farm Mut. Auto. Ins. Co.*,
   No. 18-309, 2018 WL 5809989 (W.D. Pa. Nov. 6, 2018) ................................... 18

*Meketa v. Kamoie*,
   955 F. Supp. 2d 345 (M.D. Pa. 2013) ............................................................ 8, 17

*Mirarchi v. Seneca Specialty Ins. Co.*,
   564 F. App'x 652 (3d Cir. 2014) ......................................................................... 13

*Mitchell v. State Farm Fire & Cas. Co.*,
    327 F.R.D. 552 (N.D. Miss. 2018) ........................................................6

*Monck v. Progressive Corp.*,
    No. 15-250, 2015 WL 1638574 (M.D. Pa. Apr. 13, 2015) ................................19

*Mondron v. State Farm Mut. Auto. Ins. Co.*,
    No. CV 16-412, 2016 WL 7384183 (W.D. Pa. Dec. 21, 2016) ........................18

*Northview Motors, Inc. v. Chrysler Motors Corp.*,
    227 F.3d 78 (3d Cir. 2000) ..............................................................10

*Papurello v. State Farm Fire & Cas. Co.*,
    144 F. Supp. 3d 746 (W.D. Pa. 2015).....................................................6

*Pro., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    284 A.3d 933 (Pa. Super. Ct. 2022).....................................................11

*Rancosky v. Washington Nat'l Ins. Co.*,
    170 A.3d 364 (Pa. 2017)...............................................................12

*Ridolfi v. State Farm Mut. Auto. Ins. Co.*,
    No. 1:15-CV-859, 2017 WL 4418423 (M.D. Pa. Oct. 5, 2017).........................9

*Riley v. Farmers Fire Ins. Co.*,
    735 A.2d 124 (Pa. Super. 1999) ....................................................7, 9

*Schlegel v. State Farm Mut. Auto. Ins. Co.*,
    No. 3:11-CV-2190, 2013 WL 4041848 (M.D. Pa. Aug. 8, 2013).....................14

*Serino v. Prudential Ins. Co. of America*,
    706 F. Supp. 2d 584 (M.D. Pa. 2009)...............................................14

*Shearer v. State Farm Fire and Cas. Co.*,
    2017 WL 3611743 (D. N.J. Aug. 22, 2017) ..........................................7

*Sieving v. Cont'l Cas. Co.*,
    535 F. Supp. 3d 762 (N.D. Ill. 2021)...............................................15

*Simmons v. Nationwide Mut. Fire Ins. Co.*,
    788 F. Supp. 2d 404 (W.D. Pa. 2011)...............................................9

*Smith v. State Farm Mut. Auto. Ins. Co.*,
  506 Fed. App'x 133 (3d Cir. 2012) ...................................................................12

*Sovereign Bank v. BJ's Wholesale Club, Inc.*,
  533 F.3d 162 (3d Cir. 2008) .............................................................................3

*Sunbeam Corp. v. Liberty Mut. Ins. Co.*,
  781 A.2d 1189 (Pa. 2001) ...............................................................................10

*U.S. v. Seckinger*,
  397 U.S. 203 (1970)........................................................................................10

**Rules and Statutes**

215 ILCS 5/155 ......................................................................................................17

42 Pa.C.S. § 7342(b) ..............................................................................................7

73 Pa. C.S. § 201-2(4)(xxi) ...................................................................................18

Fed. R. Civ. P. 9(b) ................................................................................................17

**Regulations**

2132 Pa. Code § 146.6(a)......................................................................................13

# INTRODUCTION

Plaintiffs' opposition brief ("Pls. Br.") fails to address nearly all the arguments made by State Farm in its opening summary judgment brief ("Opening Br.") [Dkt. 43], thereby conceding them.  This lawsuit rests on a factually flawed premise: Plaintiffs' contention that it was improper for State Farm to use Xactimate's "new construction" labor efficiency setting when estimating their "catastrophic" large fire loss.[1]  *See* SAC [Dkt. 25] ¶ 61.  Plaintiffs' pleading, however, admits the NC LES is appropriately used in "***large partial losses***," *id.* ¶ 42, and this has been confirmed through discovery, including the testimony of Plaintiffs and their public adjuster.[2]  Plaintiffs also admit the NC LES may be used for a "constructive total loss" [Dkt. 54-1 p. 12], which is how they characterized their loss.  *See* Pls. Resp. to SOF ¶ 62.  Plaintiffs are bound by these judicial admissions, which refute their theory entirely.

---

[1] State Farm hereafter refers to the Xactimate labor efficiency settings as "LES" and the "new construction" and "restoration/service/remodel" settings as "NC LES" and "RSR LES," respectively.

[2] *See* Plaintiffs' Statement of Material Facts in Opposition to State Farm's Statement of Undisputed Facts ("Pls. Resp. to SOF") [55-2] ¶ 58; Declaration of Nick Kahlon filed under seal with Motion for Summary Judgment ("Kahlon Decl."), Ex. 2 (J. Belotti Dep. Tr.) p. 63:13-20 (agreeing NC LES can be used with "portions of large partial loss"), Ex. 3 (B. Evans Dep. Tr) pp. 88:15-21, 89:23-90:3 (whether NC LES is appropriate for partial losses is a "case-by-case" determination).

Plaintiffs' contention also suffers from two insurmountable legal defects: (1) the Policy contains no provision requiring State Farm to use a particular LES (SAC ¶ 25); and (2) the parties submitted to binding appraisal resolving the amount owed under the Policy (Pls. Resp. to SOF ¶ 41).  Because Plaintiffs cannot identify any provision breached by State Farm, nor any amount owed by State Farm, summary judgment should be entered on their contract claim.

Plaintiffs offer little or no substantive response to State Farm's challenges to their extra-contractual claims.  Plaintiffs identify no factual details or legal authority supporting a common law or statutory bad faith claim.  They rely on directly overruled case law to support their claim for extraterritorial application of the Illinois Consumer Fraud Act ("ICFA").  They fail altogether to respond to State Farm's arguments regarding their claims for declaratory and injunctive relief.  All of Plaintiffs' claims are meritless and summary judgment should be entered on them in State Farm's favor.

## ARGUMENT

## I.    SUMMARY JUDGMENT SHOULD BE ENTERED ON PLAINTIFFS' BREACH OF CONTRACT CLAIM.

### A.    State Farm Has No Contractual Obligation to Use One Labor Efficiency Setting over Another when Estimating a Loss.

Plaintiffs cannot identify any Policy term that required State Farm to use the NC LES for the repair estimate for their loss.  *See* Pls. Br. p. 23 (acknowledging "the lack of an express term").  Their Complaint acknowledges: "The policy does

not prescribe a specific method of computation nor require a specific method of estimation."  SAC ¶ 25.  "The Third Circuit has made clear that a fact expressly conceded in a complaint constitutes a judicial admission and is binding on the plaintiff."  *Bellezza v. Duffy*, 2020 WL 5414761, at *3 n. 1 (M.D. Pa. Sept. 9, 2020) (collecting Third Circuit precedent).

Plaintiffs ignore this admission and now try to argue State Farm was required to use the NC LES, citing inapt provisions in their Policy.  Pls. Br. pp. 19-20.  Although Plaintiffs' attempt to salvage their contract claim "now requires that [they] take a contrary position, the allegation in the [] Complaint is a binding judicial admission."  *See Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 181 (3d Cir. 2008).  Plaintiffs cannot claim State Farm was required to use a different "method of estimation" when their Complaint admits, correctly, the Policy imposes no such requirement.

Plaintiffs' contractual argument also distorts the Policy language.  Plaintiffs point to the Policy's A2 loss settlement provision, but that provision is completely inapplicable and is not even a part of Plaintiffs' contract (a different loss settlement provision – A1 – is).  [Dkt. 54-3 p. P004 (Renewal Certificate, identifying "A1" as applicable structural loss settlement provision).]  The A1 provision, applicable here, provides for repair or replacement of the damaged portion of the dwelling with "similar construction," *i.e.,* comparable quality materials back to the same

3

condition it was in prior to the loss. *See* 9/23/23 Declaration of Alan Peppel ¶¶ 4, 8. By contrast, the A2 provision, when applicable, provides for the repair or replacement of the damaged portion of the dwelling with "common construction," *i.e.,* materials and techniques that are available today. *Id.*   That is why the A2 provision states State Farm "will pay only for repair or replacement of the damaged part of the property with common construction techniques and materials commonly used by the building trades in standard new construction" but "will not pay the cost to repair or replace obsolete, antique or custom construction with like kind and quality." *Id.*

As courts have found, the "meaning of this policy language is clear": the A2 loss settlement provision "provides for repair or replacement of damaged property using common construction techniques and materials," while the A1 loss settlement provision may allow for repairs using "custom materials of the same kind and quality as those used in the original construction of the damaged property." *Bernert v. State Farm and Cas. Co.,* No. 10-12359, 2012 WL 1060089, at *4 (E.D. Mich. Mar. 29, 2012); *Enwereji v. State Farm Fire and Cas. Co.,* No. 10-cv-4967, 2011 WL 3240866, at *6 (E.D. Pa. July 28, 2011) (A1 "provides for the cost of repairs or replacement with 'similar construction'" which, unlike A2, "does not exclude replacement of obsolete, antique, or custom materials of like kind and quality").   A2's reference to "new construction" refers to construction

materials and techniques that are commonly available and readily used today, as opposed to those used with historical or antique homes. *See* Peppel Decl. ¶¶ 8-10. It has nothing to do with Xactimate or labor efficiencies, *id.,* and cannot salvage Plaintiffs' claim. Moss Decl., ¶¶ 10-11.

Plaintiffs' strained reference to the "damaged part" language in A1 and their ACV endorsement fares no better. Plaintiffs argue this phrase somehow means coverage must "be afforded on a 'repair and remodel' basis" (Pls. Br. p. 19), but they offer no legal authority, much less a reasoned explanation, for this assertion.[3] Every loss involves "damaged parts." Plaintiffs' implausible theory would mean the NC LES could *never* be used when estimating losses. Yet Plaintiffs and their public adjuster concede that the NC LES can be used in some large partial losses. *See supra* n. 4.

Plaintiffs further engage in semantic gymnastics by referring to the RSR LES as the "repair and remodel" setting, contending it is required whenever repairs are involved. Again, Plaintiffs cannot point to anything in the Policy imposing this requirement; instead, it is based on their use of the word "repair" to re-label the labor efficiency setting.

---

[3] Plaintiffs cite only Paragraphs 32-33 of their SAC as support, but those Paragraphs deal with Xactimate's ownership and State Farm's ability to toggle Xactimate's labor efficiency settings.

Plaintiffs' reliance on *Mitchell v. State Farm Fire & Cas. Co.,* 327 F.R.D. 552, 565 (N.D. Miss. 2018) is entirely misplaced.  That case addressed the propriety of the *depreciation of labor* in calculating ACV under Mississippi law. This case has *nothing* to do with the depreciation of labor.  Importantly, Pennsylvania federal courts, applying Pennsylvania law, have answered that question differently and concluded that the Policy allows depreciation for labor. *See Papurello v. State Farm Fire & Cas. Co.,* 144 F. Supp. 3d 746, 770 (W.D. Pa. 2015) (concluding State Farm policy's plain language allows deduction of taxes and labor when calculating ACV).  Plaintiffs cannot point to anything either in the Policy or in the definition of ACV that requires the use of any estimating software or any settings therein.

### B.    Plaintiffs Cannot Contend State Farm Breached the ACV Provision.

Plaintiffs cannot contend State Farm failed to satisfy its ACV obligation, because the ACV amount was set by appraisal and paid by State Farm.  *See* Pls. Response to SOF ¶ 47.  That alone bars Plaintiffs from challenging the sufficiency of State Farm's ACV payments.  *See* Opening Br. p. 6 (citing *Dagit v. Allstate Prop. & Cas. Ins. Co.*, 2017 WL 395489, at **2-3 (E.D. Pa. Jan. 30, 2017)).

Indeed, Plaintiffs admit they cannot identify any ACV amounts owed by State Farm.[4]

Insofar as Plaintiffs suggest their claims presented a non-appraisable coverage dispute (Pls. Br. p. 21), they are wrong. *See Shearer v. State Farm Fire and Cas. Co.,* 2017 WL 3611743, at **3-4 (D. N.J. Aug. 22, 2017) (ordering appraisal of dispute over LES used in estimate).[5]   And, because Plaintiffs never made this argument before or after appraisal during the 30-day review period, 42 Pa.C.S. § 7342(b), they cannot raise it now. *See Riley v. Farmers Fire Ins. Co.*, 735 A.2d 124, 130 (Pa. Super. 1999).  The Appraisal Award "binds the parties by conclusively establishing the amount of the insured's loss," and bars Plaintiffs from seeking additional ACV amounts. *Ice City, Inc. v. Ins. Co. of N. Am.*, 314 A.2d 236, 240 (Pa. 1974); Pls. Resp. to SOF ¶ 41.

---

[4] *See* State Farm's Statement of Undisputed Facts [Dkt. 44] ("SOF") ¶ 48 (citing Kahlon Decl. Ex. 2 (J. Belotti Dep. Tr.) 146:12-20).  In response to this statement, Plaintiffs simply answered: "Denied?" Pls. Response to SOF ¶ 48. Plaintiffs' query, and the lack of citation to any evidence contradicting State Farm's assertion, is tantamount to an admission.

[5] There is nothing inconsistent between the position taken by State Farm here, that the dispute over the *amount* of loss was appraisable, and the position taken by State Farm in *Fox v. State Farm Fire & Cas. Co.*, Civ. Action 20-18131 (D.N.J), where the parties disagreed about the scope of damage *caused* by the loss, which is a legal question that cannot be resolved by appraisal.

**C.    Plaintiffs No Longer Contend State Farm Breached the RC Provision.**

State Farm moved for summary judgment on Plaintiffs' claim for RC benefits on multiple grounds, including that State Farm has paid all RC benefits to which Plaintiffs were entitled. For a while, Plaintiffs claimed they were entitled to additional RC benefits related to renovations made to a home they bought to relocate. However, Plaintiffs now admit those repair (renovation) costs were included in the purchase price amount. *See* Pls. Resp. to SOF ¶¶ 68-69, 72-73. Plaintiffs, obviously, would not be entitled to recover the cost of renovations already included in the purchase price they paid. State Farm did release RC benefits for the amount up to that purchase price, *see id.* ¶¶ 68-69, meaning that, even though Plaintiffs did not rebuild the home that sustained a "catastrophic" loss, they were paid all the ACV and RC benefits they could recover under the policy. Plaintiffs choose not to respond to State Farm's arguments on RC benefits in its motion for summary judgment, thereby waiving their RC benefits claim. *See Meketa v. Kamoie*, 955 F. Supp. 2d 345, 361 (M.D. Pa. 2013); *see also Hollister v. U.S. Postal Svc.,* 142 Fed. App'x. 576, 577 (3rd Cir. 2005).

**D.    Plaintiffs Cannot Manufacture Implied Contract Terms.**

Because they cannot identify a Policy term breached by State Farm (because there is not one), Plaintiffs pivot to an argument that State Farm somehow breached "implied contract terms," which supposedly are imposed by the covenant

8

of good faith and fair dealing. Pls. Br. p. 21. As State Farm explained, however, "there is no cause of action for a breach of the implied duty of good faith and fair dealing in a case for first party insurance benefits, like this one, where an insured is suing his insurer." *Cicon v. State Farm Mut. Auto. Ins. Co.,* No. 3:14-CV-2187, 2015 WL 926148, at *2 (M.D. Pa. Mar. 4, 2015) (citing *D'Ambrosio v. Pennsylvania Nat'l Mut. Ins. Co.*, 431 A.2d 966, 970-71 (Pa. 1981)). The claim for breach of the duty of good faith and fair dealing "is subsumed by the plaintiff's breach of insurance contract claim premised on the same conduct." *Simmons v. Nationwide Mut. Fire Ins. Co.*, 788 F. Supp. 2d 404, 409 (W.D. Pa. 2011) (collecting cases); *see also Ridolfi v. State Farm Mut. Auto. Ins. Co.*, No. 1:15-CV-859, 2017 WL 4418423, at *5 (M.D. Pa. Oct. 5, 2017) (same). Plaintiffs do not attempt to address, much less distinguish, this case law requiring dismissal of their implied covenant claim (Count IV). Plaintiffs themselves acknowledge their "claim for breach of that duty … is subsumed within [their] breach of contract claim." Pls. Br. p. 26.

Any claim by Plaintiffs for more monies is also barred by the parties' Appraisal Award, whether plead as breach of contract or the implied covenant. *See Riley*, 735 A.2d at 130.

Moreover, Plaintiffs would not be able to use the covenant to create "implied contract terms." The covenant is merely an "interpretive tool to determine the

parties' justifiable expectations." *Northview Motors, Inc. v. Chrysler Motors Corp.*, 227 F.3d 78, 91 (3d Cir. 2000). It may not be used "to add new terms to an agreement." *Andrichyn v. TD Bank, N.A.*, 93 F. Supp. 3d 375, 387 (E.D. Pa. 2015) (quoting *In re IT Group, Inc.*, 448 F.3d 661, 671 (3d Cir. 2006)).

Plaintiffs append to their implied covenant argument a separate argument that the Policy is ambiguous (a theory nowhere plead in the Complaint). This argument is a hollow shell. While Plaintiffs argue ambiguities must be construed in their favor (Pls. Br. pp. 23-24), they fail to identify *any* policy language that is actually ambiguous. Plaintiffs are not arguing the Policy is ambiguous; rather, they are arguing that the labor efficiency *labels* created by Xactimate (and Plaintiffs' characterization thereof) are possibly ambiguous. *Id.* p. 24 (citing the "definition" of "new construction" and "repair and remodel"). The interpretive doctrines cited by Plaintiffs are limited to contract terms,[6] and certainly do not apply to construing labels of a third-party estimating software's labor efficiency settings.

---

[6] The *contra preferentum* doctrine is limited to ambiguous contract terms. *U.S. v. Seckinger*, 397 U.S. 203, 216 (1970). So too is the "reasonable expectations" doctrine, except for the limited circumstance where an insured received different coverage than they purchased. *See Bubis v. Prudential Prop. & Cas. Ins. Co.,* 718 A.2d 1270, 1272 (Pa. Super. Ct. 2000). Trade usage and custom may be used to interpret contract terms having "a special meaning in a particular industry," *Sunbeam Corp. v. Liberty Mut. Ins. Co.,* 781 A.2d 1189, 1193 (Pa. 2001), but here the terms are not in the Policy, they are the names of Xactimate software settings.

## II.    THERE IS NO EVIDENCE OF BAD FAITH (COUNT I).

Plaintiffs argue their bad faith claim does not depend on their contract claim, but "if the bad faith claim is premised only on the denial of coverage, resolution of a coverage claim on the merits in favor of the insurer requires dismissal of a bad faith claim." *Pro., Inc. v. State Farm Mut. Auto. Ins. Co.*, 284 A.3d 933, at *5 (Pa. Super. Ct. 2022) (Table). "Under such circumstances, the insurer necessarily had a reasonable basis for denying benefits." *Id.*   The SAC alleges that State Farm breached the Policy by: (1) underpaying Plaintiffs' claim as a resulting of using the NC LES [Dkt. 25 ¶ 115; *see also id.* ¶ 110]; and (2) not paying the replacement cost holdback (*id.* ¶ 109).   Similarly, nearly all of Plaintiffs' bad faith allegations involve the alleged underpayment of the claim, or a delay resulting from the alleged underpayment. *Id.* ¶¶ 78, 79.  As demonstrated below, the scant allegations that are distinct from contract claim cannot support a claim of bad faith.  Thus, the determination that State Farm did not breach the contract is fatal to Plaintiffs' bad faith claim. *See Catania v. Zurich Am. Ins. Co.*, No. CV 13-1278, 2014 WL 12599599, at *3 (W.D. Pa. June 16, 2014); *Cresswell v. Pennsylvania Nat. Mut. Cas. Ins. Co.*, 820 A.2d 172, 179 (Pa. Super. Ct. 2003).

Plaintiffs have no evidence to support their laundry list of boilerplate bad faith allegations, and they have not overcome the expert evidence provided by Linda Kaiser Conley (State Farm's insurance industry standards expert) making

11

clear these conclusory allegations do not provide a basis for bad faith.  *See* Kahlon Decl., Ex. 8 ("Conley Report") pp. 20-42.  Plaintiffs now abandon most of those allegations, and instead argue solely that State Farm acted in bad faith by: (i) using the NC LES in their estimate, (ii) requesting a release, (iii) demanding appraisal, and (iv) refusing to grant another voluntary waiver of the Policy's suit limitation period.  Pls. Br. pp. 31-33.  None of these remotely comes close to bad faith.

Plaintiffs argue State Farm "low-balled" their insurance claim by using the NC LES (Pls. Br. 3), but disagreements over claim valuation are a "routine scenario in the processing of an insurance claim," and do not constitute bad faith. *Smith v. State Farm Mut. Auto. Ins. Co*., 506 Fed. App'x 133, 136, 137 (3d Cir. 2012).  As the testimony of State Farm's fact  and expert witnesses demonstrated (*see* SOF ¶¶ 14-15 64, 101), Plaintiffs cannot show that State Farm "did not have a reasonable basis" for using the NC LES,[7] much less "knew or recklessly disregarded its lack of a reasonable basis" for using that setting.  *Rancosky v.*

---

[7] Plaintiffs acknowledged this determination must be made on a "case-by-case" basis, *see supra* n. 3, and "is up to the judgment of the estimator."  SOF ¶ 63. Plaintiffs' manufactured representation that "State Farm systematically employs the NC LES … for all losses over $100,000" (Pls. Br. p. 3) pertains to their class certification motion, but there is absolutely no factual support for this invented theory, and regardless it is disproven by the record.  *See* SOF ¶¶ 15, 64; Moss Decl. ¶¶ 4-8; Shumate 9/23/23 Decl. ¶¶ 4-6.

*Washington Nat'l Ins. Co.*, 170 A.3d 364, 377 (Pa. 2017).[8]  That the appraisal

assigned a higher ACV than State Farm's estimate (but much lower than Plaintiffs'

estimate) certainly does not mean State Farm engaged in bad faith "in arriving at

its initial estimate or by standing by that estimate until the appraisal process

concluded.  That is, after all, what the appraisal process is for—settling disputes

about the value of a claim."  *Mirarchi v. Seneca Specialty Ins. Co.*, 564 F. App'x

652, 656 (3d Cir. 2014) (citation omitted).  *See also* SOF ¶¶ 27-29, Conley Report

pp. 26-28.

Nor is merely requesting a release bad faith.  *See* Conley Report p. 27.

Unlike in *Hayes v. Harleysville Mut., Ins. Co.,* 841 A.2d 121, 128 (Pa. Super.

2003), Plaintiffs here admit State Farm never *required* that they sign a release to

obtain insurance proceeds.  *See* Pls. Response to SOF ¶ 78.  Plaintiffs chose not to

sign the release proposed by State Farm, yet they were paid the remaining ACV

benefits under the Appraisal Award anyway, along with RC benefits towards the

purchase of their new house.  *Id.* ¶¶ 47, 69.

Requesting an appraisal to resolve disputed ACV amounts is a contractual

right, not bad faith.  *Mirarchi,* 564 F. App'x at 656; *Ice City,* 314 A.2d at 241.

While Plaintiffs contend "there was not yet a ripe disagreement regarding the

---

[8] Plaintiffs' citation to 2132 Pa. Code § 146.6(a) is unavailing, as they cannot claim State Farm failed to disclose its estimate used the NC LES.  *See* Pls. Resp. to SOF ¶ 88.

amount of loss" (Pls. Br. p. 34), they offer no legal authority supporting a "ripeness" requirement for appraisals. Regardless, the parties' dispute was clearly ripe: their estimated loss amounts were over $200,000 part. *See* Pls. Resp. to SOF ¶¶ 17, 22. Even if State Farm had accepted Plaintiffs' LES choice, it only would have accounted for around $20,000 of that difference, and there would have remained other much larger disputed amounts that needed to be resolved. *Id.* ¶ 38; *see also* Conley Report p. 22.

Finally, Plaintiffs cannot contend State Farm engaged in bad faith by not agreeing, for a third time, to voluntarily waive its right to enforce the Policy's contractual one-year deadline for filing suit. *See* Conley Report pp. 28-29. Enforcing a contractual right is not bad faith, nor is refusing to relinquish a contractual right. *See Schlegel v. State Farm Mut. Auto. Ins. Co.*, No. 3:11-CV-2190, 2013 WL 4041848, at *4 (M.D. Pa. Aug. 8, 2013); *Serino v. Prudential Ins. Co. of America*, 706 F. Supp. 2d 584, 592 (M.D. Pa. 2009). State Farm voluntarily twice extended the contractual one-year deadline for filing suit. *See* Pls. Response to SOF ¶ 83. It had no obligation to do so a third time. Conley Report p. 29.

## III. PLAINTIFFS CANNOT SUSTAIN THEIR ICFA CLAIM (COUNT II).

### A. The ICFA Does Not Apply Extraterritorially.

Because the ICFA "does not have extraterritorial effect," *Avery v. State Farm Mut. Auto. Ins. Co.,* 835 N.E.2d 801, 853 (Ill. 2005), non-residents such as

14

Plaintiffs "may sue under ICFA only if the circumstances relating to the alleged fraudulent transaction occurred mostly in Illinois." *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 396 (7th Cir. 2009).[9]  ICFA claims by non-residents are routinely dismissed where the allegations occurred primarily outside of Illinois. *See, e.g., id.* at 397 (affirming dismissal of ICFA claim by Florida resident); *Sieving v. Cont'l Cas. Co.*, 535 F. Supp. 3d 762, 771 (N.D. Ill. 2021) (dismissing ICFA claim by California resident).

Plaintiffs argue the ICFA applies because their Policy was "formulated" and "signed" in Illinois, and unidentified deceptive acts supposedly "originated" in Illinois.[10]  Pls. Br. p. 28.  But under *Avery* and *Crichton,* "the administration of a defendant's business in Illinois" and even "dissemination" of allegedly deceptive documents from Illinois "is insufficient to give a nonresident plaintiff" an ICFA claim.  *Sieving,* 535 F. Supp. at 771.

Plaintiffs cite the intermediate appellate court's ruling in *Avery* that ICFA applies extraterritorially, but that aspect of the ruling was overturned by the Illinois Supreme Court. Pls. Br. p. 20.  Then, Plaintiffs incorrectly quote part of the Illinois

---

[9]  As State Farm will explain in its class certification opposition, constitutional and choice-of-law principles also preclude Plaintiffs from pursuing individual or class ICFA claims. !

[10] Plaintiffs generally cite to two deposition transcripts as evidence that these unidentified acts "originated" in Illinois, but nowhere identify specifically any testimony supporting that assertion.

Supreme Court's opinion, while omitting the sentences reversing the appellate ruling:

> We agree with the appellate court that the place where a company policy is created or where a form document is drafted may be a relevant factor to consider in determining the location of a consumer transaction. ***However, in this case, it does not follow that because a single factor relating to State Farm's claims practices with its policyholders took place in Illinois, the claims practice itself "occurred in Illinois." In fact, just the opposite is true.*** The overwhelming majority of circumstances relating to the disputed transactions in this case—State Farm's claims practices—occurred outside of Illinois for the out-of-state plaintiffs.

*Avery*, 216 Ill. 2d at 187 (emphasis added).

The Illinois Supreme Court explained how many of the material factors for Avery's automobile insurance claim took place in Louisiana, and not Illinois, including where his car was kept, where the collision occurred, where an estimate was prepared, where he was allegedly deceived by being given the replacement parts at issue, and where his car was repaired. *Id.* at 188.  Similarly, it is undisputed that the material events upon which Plaintiffs base their ICFA claim here took place in Pennsylvania, not Illinois: i) the insureds and their insured property are located in Pennsylvania, ii) the fire occurred in Pennsylvania, iii) the property was inspected and estimated in Pennsylvania, iv) Plaintiffs' claim was handled and paid by State Farm personnel in Pennsylvania, v) the appraisal occurred in Pennsylvania, and vi) Plaintiffs were allegedly deceived in

16

Pennsylvania. *See* SOF ¶¶ 1, 85-86. As in *Avery*, "the overwhelming majority of the circumstances which relate to [the named plaintiff] and the other out-of-state plaintiffs' claims proceedings—the disputed transactions in this case—occurred outside Illinois." *Avery*, 216 Ill. 2d at 188. Because ICFA does not have extraterritorial application here, State Farm is entitled to summary judgment on that claim.

### B.    Plaintiffs' ICFA Claim Is Preempted.

State Farm additionally demonstrated Plaintiffs' ICFA claim is preempted by Illinois Insurance Code 215 ILCS 5/155. *See* Opening Br. p. 15. Plaintiffs offer no response to this argument, thereby waiving opposition to summary judgment on that independent ground. *See Hollister,* 142 Fed. App'x. at 577; *Meketa,* 955 F. Supp. 2d at 361.

### C.    Plaintiffs Have Not Sufficiently Identified Any Deceptive Acts.

Plaintiffs offer no response to State Farm's argument that they fail to identify any allegedly deceptive acts with particularity under Fed. R. Civ. P. 9(b), as required for an ICFA claim. *See* Opening Br. p. 16. Summary judgment should be entered on their ICFA claim for that reason as well.

## IV.    THERE IS NO UPTCPL VIOLATION (COUNT VI).

State Farm moved for summary judgment on Plaintiffs' UPTCPL claim (Count V) on three grounds, only two of which are mentioned in Plaintiffs' brief. First, mere "[a]llegations of misconduct in the claims handling process are not

17

actionable under the UTPCPL." *Kerr v. State Farm Mut. Auto. Ins. Co.*, No. 18-309, 2018 WL 5809989, at *6 (W.D. Pa. Nov. 6, 2018) (quotation omitted); *Mondron v. State Farm Mut. Auto. Ins. Co.*, No. CV 16-412, 2016 WL 7384183, at *5 (W.D. Pa. Dec. 21, 2016) (such claims may only be "asserted under Pennsylvania's bad faith statute").[11]    Plaintiffs have no response to this point of law, so they ignore it, thereby conceding their UTPCPL claim cannot stand.

Second, Plaintiffs identify no malfeasance as required for a UPTCPL claim. *Gardner v. State Farm Fire & Cas. Co.*, 544 F.3d 553, 564 (3d Cir. 2008). Plaintiffs argue State Farm "intentionally undervalued" their claim (Pls. Br. P. 36), but "a claim for failure to pay the full amount" is "nonactionable 'nonfeasance' under the UTPCPL." *Ke v. Liberty Mut. Ins. Co.*, No. CV 20-1591, 2020 WL 7353892, at *7 (E.D. Pa. Dec. 14, 2020); *Mondron,* 2016 WL 7384183, at *5 (same). Plaintiffs have no response to this case law either, so again just ignore it.

Third, Plaintiff cannot identify any "affirmative deceptive acts by [defendant] upon which the plaintiffs justifiably relied to their financial detriment," as required to prove claim under the UTPCPL's catch-all provision in 73 Pa. C.S. §

---

[11] *Kerr* and *Mondron* cite *Gibson v. Progressive Specialty Ins. Co.*, where the court explained that the Pennsylvania Supreme Court has recognized "a legislative scheme in which misconduct relating to the *selling* of a policy is governed by the [UTPCPL] and misconduct related to the *handling* of claims allegedly due under the policy is governed by the bad faith statute." *See* 2015 WL 2337294, at *4 (E.D. Pa. May 13, 2015) (citation omitted) (emphasis added).  Plaintiffs' claims relate to the handling of their insurance claim, not the selling of their Policy.

201-2(4)(xxi).  *Angino v. Wells Fargo Bank, N.A.*, No. 1:15-CV-418, 2016 WL 787652, at *10-11 (M.D. Pa. Feb. 19, 2016), *report and recommendation adopted*, 2016 WL 759161, *aff'd*, 666 F. App'x 204 (3d Cir. 2016); *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 222 (3d Cir. 2008).  Plaintiffs fail to identify any "affirmative deceptive acts," and certainly none they "justifiably relied" on to their financial detriment, nor do they provide any evidence of same.  Plaintiffs point to State Farm "deliberately employing an inappropriate labor efficiency" (Pls. Br. p. 38), but it is undisputed they were aware of State Farm's choice of labor efficiency from the face of its estimate, *see* Pls. Resp. to SOF ¶¶ 18, 88, so there was no deception.[12]  Plaintiffs also did not *rely* on this choice, but instead spent months *contesting* it, through their public adjuster. *Id.* ¶ 89.  Since Plaintiffs do not and cannot show they justifiably relied on any alleged misrepresentations by State Farm, their UTPCPL claim fails for this reason as well.  *See Monck v. Progressive Corp.*, No. 15-250, 2015 WL 1638574, at *7 (M.D. Pa. Apr. 13, 2015) ("Plaintiff could not have justifiably relied on the way Defendants handled her claim.").

---

[12] Plaintiffs offer unsubstantiated assertions that State Farm's choice of LES negatively affected them (Pls. Br. pp. 38-39), but they fail to identify any *misrepresentations* by State Farm they relied on that caused these supposed harms. *See Bolus v. Nationwide Prop. & Cas. Co.,* No. 3:16-CV-00753, 2018 WL 1474669, at *4 (M.D. Pa. Mar. 26, 2018) (dismissing UTPCPA claim where alleged damages were caused by adjustment of claim, not by alleged misrepresentations).

## V.    PLAINTIFFS FAIL TO ADDRESS THEIR LACK OF STANDING TO OBTAIN DECLARATORY OR INJUNCTIVE RELIEF.

State Farm requested summary judgment on Plaintiffs' declaratory judgment claim (Count V) and their requests for injunctive relief (in Counts III and VI) because Plaintiffs are no longer State Farm insureds (Pls. Resp. to SOF ¶ 94), and thus lack standing to seek equitable relief against future injuries they cannot suffer. Plaintiffs ignore their lack of standing and "thus have waived [their] opportunity to contest" entry of judgment against them on these claims. *Ankele v. Hambrick*, 286 F. Supp. 2d 485, 496 (E.D. Pa. 2003), *aff'd*, 136 F. App'x 551 (3d Cir. 2005).

## <u>CONCLUSION</u>

Plaintiffs cannot identify any Policy provision breached by State Farm's use of the NC LES and admit the absence of any in their pleading, nor can they identify any amounts owed under the Policy after the parties' appraisal; Plaintiffs cannot show State Farm acted in bad faith by using the NC LES to estimate their loss, when all the record evidence show this was fully appropriate; Plaintiffs' add-on claims under ICFA and the UTCPL fail as a matter of law; and Plaintiffs cannot seek equitable relief because they are no longer State Farm insureds.  Plaintiffs fail to address most of these arguments, thereby conceding them.  Accordingly, State Farm respectfully requests that the Court grant summary judgment in its favor on Plaintiffs' claims.

Dated:  September 25, 2023        Respectfully submitted,

/s/ *Joseph A. Cancila, Jr.*
Joseph A. Cancila, Jr.
Nick Kahlon (*pro hac vice*)
Brian Neff (*pro hac vice*)
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison Street, Suite 2900
Chicago, IL 60602
(312) 471-8700
jcancila@rshc-law.com
nkahlon@rshc-law.com
bneff@rshc-law.com

Yolanda Konopacka DeSipio
BENNETT, BRICKLIN & SALTZBURG LLC
960 Harvest Drive
Building B-Suite 100
Blue Bell, PA 19422
(267) 654-1100
desipio@bbs-1aw.com

*Attorneys for Defendant*
*State Farm Fire and Casualty Company*

## CERTIFICATION OF WORD COUNT

I, Joseph A. Cancila, Jr., the undersigned, hereby certify subject to Fed. R. Civ. P. 11 that the foregoing brief (excluding the cover page, tables of contents and authorities, signature block and certifications) complies with the 5,000 word-count limit in Local Rule 7.8(b)(2).   According to the word count feature of the Microsoft Word word-processing system used to prepare the brief, the word count is 4,998.

September 25, 2023

/s/ *Joseph A. Cancila, Jr.*

## CERTIFICATION OF SERVICE

I, Joseph A. Cancila, Jr., the undersigned, hereby certify that on September 25, 2023, I served a copy of State Farm Fire and Casualty Company's Brief in Support of Motion for Summary Judgment, with accompanying documents, upon Plaintiffs' counsel listed below via the Court's Electronic Filing System and E-mail.

Harry A. Cummins, Esquire
Roman Rabinovich, Esquire
Lee Squitieri, Esquire
Wilkofsky, Friedman, Karel & Cummins
299 Broadway, Suite 1700
New York, NY 10007

/s/  *Joseph A. Cancila, Jr.*