# EXHIBIT 2

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

_____

| | | |
|---|---|---|
| JAMIE BELOTTI and<br>BECKY BELOTTI | : | CIVIL ACTION NO. 3:22-cv-01284 |
| Plaintiffs, | : | |
| vs. | : | |
| STATE FARM FIRE AND<br>CASUALTY COMPANY, | : | |
| Defendant. | : | |

_____

## DECLARATION OF ALAN PEPPEL

I, Alan Peppel, do hereby declare pursuant to 28 U.S.C. § 1746:

1.  I am an Underwriting Team Manager, with underwriting responsibilities for State Farm Fire and Casualty Company ("State Farm") for the State of Pennsylvania. I have knowledge of the underwriting and policy information and other matters asserted herein.

2.  As part of my responsibilities as an Underwriting Team Manager, I am familiar with the State Farm underwriting records existing for and pertaining to the issuance of homeowners' insurance policies by State Farm, including Policy Number 78-BJ-Z173-8, issued to Jamie Belotti and Becky Belotti (collectively the "Belottis"). I have reviewed State Farm's underwriting records in respect to the

Belottis' Policy Number 78-BJ-Z173-8, and confirmed by my review of those records that the policy was first issued with an effective date of December 5, 2008 for the residential property at 156 Foote Avenue, Duryea, Pennsylvania. That policy remained in force through December 5, 2021, when State Farm nonrenewed the policy because the property was no longer owner occupied on an ongoing basis. State Farm's underwriting records confirm that Jamie Belotti and Becky Belotti are no longer insured by State Farm Fire and Casualty Company.

3. State Farm's underwriting records confirm that when the Belotti Policy was first issued in December 2008, the Belottis chose to insure their home to a coverage level at its full estimated replacement value, *i.e.* 100% to value. State Farm's underwriting records further reflect that the Belottis continued to maintain the coverage level for their home at its full estimated replacement cost value (100% to value) throughout the time they remained State Farm insureds until December 5, 2021.

4. A copy of the Belotti Certified Policy Record as of their date of loss on September 22, 2019 is appended hereto as Exhibit A. The renewal certificate for the Belottis' Policy, which appears at page 4 of the Certified Policy Record, reflects that Loss Settlement Provision applicable to the policy is the A1 Replacement Cost – Similar Construction provision.

5.      The A1 Loss Settlement Provision is applicable to nearly all of State Farm's homeowner insurance policies in Pennsylvania. In Pennsylvania, approximately 98.5% of State Farm insured homes have the A1 Loss Settlement Provision, and that percentage increases to 99.9% when the homes are insured to at least 80% of their estimated replacement cost value.

6.      If a dwelling is insured for an amount equal to or greater than 80% of the estimated replacement cost, the basic premiums contemplate that the A1 Loss Settlement Provision will apply. Consequently, it would be inaccurate to say that insureds pay more for the A1 Loss Settlement Provision. The very small percentage of insureds who have an A2 Loss Settlement Provision applicable to their policies do, however, receive an appropriate adjustment to their premium to account for the application of common construction materials and techniques found in A2 Loss Settlement Provision.

7.      The language of both the A1 and A2 Loss Settlement Provisions is recited in State Farm's Policy Form FP-7955 at pages 11-12 of FP-7955, although only the A1 Loss Settlement Provision is applicable to the Belottis' policy. The language of both Loss Settlement Provisions is reprinted below:

COVERAGE A – DWELLING

1.   **A1- Replacement Cost Loss Settlement - Similar Construction.**

    a.    We will pay the cost to repair or replace with similar construction and for the same use on the premises shown in the **Declarations**, the damaged part of the property covered under **SECTION I- COVERAGES, COVERAGE A - DWELLING**, except for wood fences, subject to the following:

        (1)    until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the property, up to the applicable limit of liability shown in the **Declarations**, not to exceed the cost to repair or replace the damaged part of the property;

        (2)    when the repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the Declarations, whichever is less;

        (3)    to receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify us within 30 days after the work has been completed; and

        (4)    we will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure, except as provided under **Option OL - Building Ordinance or Law Coverage.**

    b.    Wood Fences: We will pay the actual cash value at the time of loss for loss or damage to wood fences, not to exceed the limit of liability shown in the **Declarations** for COVERAGE A - DWELLING EXTENSION.

2.    **A2 - Replacement Cost Loss Settlement - Common Construction.**

4

a. We will pay the cost to repair or replace with common construction and for the same use on the premises shown in the **Declarations**, the damaged part of the property covered under **SECTION 1- COVERAGES, COVERAGE A - DWELLING**, except for wood fences, subject to the following:

   (1) we will pay only for repair or replacement of the damaged part of the property with common construction techniques and materials commonly used by the building trades in standard new construction. We will not pay the cost to repair or replace obsolete, antique or custom construction with like kind and quality;

   (2) until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the property, up to the applicable limit of liability shown in the Declarations, not to exceed the cost to repair or replace the damaged part of the property as described in a.(1) above;

   (3) when the repair or replacement is actually completed as described in a.(1) above, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the **Declarations**, whichever is less;

   (4) to receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify us within 30 days after the work has been completed; and

   (5) we will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair or demolition of a building or

5

      other structure, except as provided under **Option OL • Building Ordinance or Law Cover- age.**

  b. Wood Fences: We will pay the actual cash value at the time of loss for loss or damage to wood fences, not to exceed the limit of liability shown in the **Declarations** for COVERAGE A - DWELLING EXTENSION.

  8. The A1 Loss Settlement Provision provides for repair or replacement of the damaged portion of the dwelling with "similar construction," *i.e.* comparable quality materials back to the same condition it was in prior to the loss. The A2 Loss Settlement Provision, on the other hand, provides for the repair or replacement of the damaged portion of the dwelling with "common construction," *i.e.* materials and techniques that are available today. This is why the A2 Loss Settlement Provision states State Farm "will pay only for repair or replacement of the damaged part of the property with common construction techniques and materials commonly used by the building trades in standard new construction" but "will not pay the cost to repair or replace obsolete, antique or custom construction with like kind and quality."

  9. For dwellings insured for an amount equal to or greater than 80% of the estimated replacement cost, the A2 Loss Settlement Provision generally would only apply in rare circumstances. Typically that is when a dwelling includes building components or methods unusually difficult, prohibitively expensive, or impossible to duplicate. Examples of unique, extraordinary or obsolete construction features might include leaded glass windows, lath and plaster walls, ornate or elaborate

woodwork, unique plumbing or lighting fixtures or other unique construction components or methods. Under those circumstances, Underwriting may only agree to insure the property with common construction, as the A-2 Loss Settlement Provision sets forth, if replacement with the similar construction called for if A-1 is not practicable. This situation did not apply to the Belotti home.

      10.   Nothing contained in the language of either the A1 or A2 Loss Settlement Provision is intended by State Farm to refer to any estimating tool that will be used by State Farm in preparing a structural damage estimate or any setting within a structural damage estimating tool. The reference to "new construction" in the A2 Loss Settlement Provision refers to the materials and techniques that are commonly available and readily used today within the general construction industry.

    I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Date: September 25, 2023                       *Alan Peppel*
                                                       Alan Peppel